[Filed January 18, 1892.]

## SILAS M. LEONARD v. SOUTHERN PACIFIC CO.

DAMAGES — NEGLIGENCE — DEFECTIVE RAILROAD BRIDGE — EVIDENCE. — In an action against a railroad company to recover damages for injuries received by a passenger in the wrecking of a train caused by the fall of a bridge over which the train was passing, where the stability of the whole structure is involved in the charge of negligence alleged in the complaint, it is competent to give evidence of the condition at the time of the accident of portions of the bridge left standing and not immediately involved in the wreck.

EVIDENCE—EXPERIMENTS—DISCRETION OF COURT.—Experiments and demonstrations used in evidence should be made under conditions similar to those attending the fact to be illustrated; and when this rule is observed, the discretion of the trial court in allowing the result of such experiments to go to the jury will not be reviewed in the absence of abuse thereof.

Marion county: R. P. BOISE, Judge.

Defendant appeals. Affirmed.

*Bronaugh, McArthur, Fenton & Bronaugh,* for Appellant.

*Dell Stuart,* and *Geo. D. Young,* for Respondent.

LORD, J.—This is an action to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of the negligence of the defendant on the occasion of the wrecking of the defendant's railroad train at Lake Labish. The trial resulted in a judgment for the plaintiff, from which the defendant prosecutes this appeal.

There are several assignments of error, all of which relate to the admission of evidence, but which, for convenience, have been grouped under two heads, or objections, and thus presented to this court. Before proceeding to their consideration, and as essential to a fair understanding of them, it is necessary to ascertain the issue to be tried, and the facts and circumstances under which the exceptions were taken as shown by the bill of exceptions.

Among other things the complaint alleges that Lake Labish, the place where the train was wrecked, "is a low, wet, marshy place, well suited to the decay of bridge timbers, or any other wooden structure pertaining to a railroad; that it was of such character of soil as to prevent adequate foundation or stability of structure for a railroad bridge, though the defendant maintained a bridge across the same at the time and so crossed its trains over; that defendant rendered said foundation even less stable by casting gravel and loose stone therein instead of properly filling it; that the nature of said soil and foundation were well known to the defendant at said time, or with ordinary care on its part would have been known; that said bridge was permitted to

stand and was used by defendant to pass its trains over, although the timbers and materials therein were decayed and worthless and wholly unfit for the purposes for which they were used; that on said day said bridge, by reason of said worthless foundation, and the negligent manner in which it was maintained by defendant, and by reason of its said improper construction, and the failure of defendant to make proper repairs, gave way underneath said train, and the car on which plaintiff was being carried was thrown from the track and cast to the bottom of said lake and turned partly over and on end, and thus it was that plaintiff was thrown violently down and about said car, and was greatly injured," etc.

The bill of exceptions shows that "evidence was introduced tending to show that the bridge or trestle-work across the place known as Lake Labish, mentioned in the pleadings, was a structure built of timber; that the trestles or bents were composed of mud-sills, upon each of which rested four posts, the two outside posts called batter-posts inclining inward toward each other, and the two inside posts, called plumb-posts, standing perpendicularly, upon the top of which four posts rested another timber called the cap; that longitudinal timbers, known as stringers, rested upon these caps, upon which stringers the cross-ties were laid which supported the steel rails of the track of the defendant's road mentioned in the pleadings; that the said bents were of different heights at different points, and ranged from eight or ten to sixteen or eighteen feet high; that the mud-sills of the bent rested on piling driven into the ground, and the stringers and rails were fastened together with bolts, upon one end of each of which was a head, and the other end a screw thread for a nut; that the entire length of said trestle work or bridge was about fifteen hundred feet, and that about six hundred feet thereof, measuring from the north bank of said Lake Labish, was involved in the wreck, and fell to the ground at the time when the train mentioned in the pleadings was

wrecked." There was evidence also "tending to show that said bents were about twenty feet apart, and that some twenty-five of the bents which fell, were erected of new timber about eighteen months prior to the date of said wreck." It will be noted that the bridge is one continuous structure, made of bents and stringers, that its length from one bank of the lake to the other is fifteen hundred feet, and that six hundred feet of it went down underneath the train.

The main ground of complaint is that the plaintiff was allowed by the trial court to introduce evidence in regard to other portions of the bridge than that portion of it— estimated to be six hundred feet—involved in the wreck. The contention is, that the evidence must be confined to the wrecked portion of the bridge alone, and that the admission of evidence tending to show that the southerly portion of the bridge, more than a hundred feet away from the wreck, was not in a good condition or out of repair, was error. The bill of exceptions shows that Mr. Lovell, a witness for the plaintiff, was asked: "How was the remainder of the bridge with reference to that in appearance?" [The word that here used, referred to that portion involved in the wreck.] An objection was made to the reception of this testimony on the ground that it related to a part of the bridge not involved in the wreck, but the court overruled it, and the witness answered: "Apparently the same age and of the same construction as these five bents [involved in the wreck], and those bents at that point were built with mortises and tenons, and the timbers generally appeared to be of the same condition and age. Q. What do you mean by the same condition? A. Well, there would be some bents—perhaps one end of the timber would be comparatively sound and the next would be almost worthless. Q. What did you find with reference to the bolts through the stringers in the bridge, if anything, as to their condition and the nuts on them?" [This question referred to all that portion of the structure in the neigh-

borhood of that which broke down.]   "A. Quite a number of bolts, I think seventy-six, in that portion of the structure had no nuts on them at all."   Another witness was asked: " Q. You may state the condition of the piling at that time? A. There was some piling that was sound as when they were driven there, but there was some of them very rotten. Sometimes you would find a bent with one rotten pile, sometimes it would have two, and sometimes they would all be sound.   They were scattered all through the trestle from one end to the other.   I could not say that there was any rotten piling in the north end, nor in the south end, but they were in the trestle."   This answer was objected to, but the court held that "it was competent to show everything about the whole bridge."

There is other evidence of the same character, and to which the same objection was made and overruled, but this much is sufficient to test the force of the objection to its competency and materiality.   It is no doubt true, as claimed by counsel, that defects in other portions of a railroad track, remote from the place of the injury, and in no way whatever contributing to it, are inadmissible as evidence.   The cases cited support this view, and some reference to them is necessary to show their application.

In *L. & N. R. R. Co.* v. *Fox*, 11 Bush, 505, the evidence showed that the road was divided into sections, of several miles in extent, and the immediate supervision of the track in each committed to a section boss.   The accident occurred on a section under control of one Howard, a section boss, and the plaintiff was permitted to prove against the objections of the defendant, that other portions of Howard's section were in a bad condition.   The court says:   "The portions of the track to which that evidence related were so remote from the scene of the accident that they could not have contributed to it in any degree whatever.   The general condition of the road was not involved in the issue to be tried.   The question was whether the train had been thrown from the track in consequence of the negligence of the

company or its agents, or servants; and evidence of negligence or carelessness which could not have contributed to that result, was clearly incompetent."

In *Grand R. R. Co.* v. *Huntley*, 38 Mich. 540; 31 Am. Rep. 321, the injury was caused by a passenger car being thrown from the track and upset. The testimony showed that the mischief was caused by the breaking of an axle containing a large flaw within the wheel or near its edge. Testimony was introduced bearing upon the condition of the cars and track, and the speed of the train, etc. The court says: "We are also of the opinion that no defects in the track could be relied on to show negligence contributing to the accident except those existing where the track was injured or displaced; and that testimony as to the condition of the road away from the scene of the injury, was improper to make out a cause of action, and could only tend to raise false issues. The testimony should be confined to the time as well as the place of the accident." (*Morse* v. *M. & St. Louis R. R. Co.* 30 Minn. 465; *Reed* v. *N. Y. C. R. R. Co.* 45 N. Y. 574.) In these cases it will be observed that the general condition of the track was not involved in the issue to be tried, and that the other portions of it to which the objectionable evidence related was too remote to have contributed in any way to the accident.

In the case at bar the bridge is one continuous structure made of bents and stringers, and no part of it wholly independent of the other. The complaint charges that the lake across which the bridge was built was a low, wet, marshy place, well suited to cause the decay of bridge timbers, and that the character of its soil was such as to prevent adequate foundation or stability of structure for a railroad bridge; that the defendant knew this, but permitted the bridge to stand and used it to pass over trains when the timbers and materials were worthless and decayed; and that it was by reason of such unstable foundation, its improper construction, and the failure to make proper repairs, etc., that the bridge gave way underneath the train and caused the injury.

It is thus seen that the general condition of the bridge as one structure is involved in the issue to be tried, and all evidence as to its construction, the instability of its foundation, and condition tending to show that it was unfit and unsafe and liable to cause the injuries complained of, was relevant and admissible. In such case the principle invoked by the authorities cited, to the effect that defects in other portions of a railroad track not involved in the issue to be tried, nor connected with the place of injury, but so remote therefrom that they could not in any way have caused the injury, has no application. But difficult as it is to obtain an accurate understanding of the questions in dispute, from the bill of exceptions, on account of its many imperfections arising from the manner of its makeup, I do not understand the evidence excepted to was introduced for the purpose of attributing the accident to defects in other portions of the bridge than the wrecked part. The parties to the record stood in this wise: While the plaintiff claimed that, for the causes alleged, the structure was wholly unfit and unsafe to be used as a railroad bridge, he introduced evidence as' to the wrecked part tending to show that the material therein was greatly decayed and rotten, especially the mud-sills and piling on which the bridge rested, and also the caps and posts in the bent to a less extent but not in a less degree; and further, that there was no longitudinal bracing, and that one of the bents was out of position as much as six inches and leaning in the direction that the train was going. To these causes the plaintiff, by his evidence, attributed the falling of the bridge—that is, the wrecked part which fell. The defendant claimed and sought to show that the wrecked part was rebuilt about a year before, and that it was sufficient in construction and strength for the use of trains to pass over, and as a consequence that the falling of the wrecked part was the result of other causes. This position of the defendant was met by evidence on the part of the plaintiff tending to show that the first four and last five bents had not been rebuilt, and

that the twenty-three intervening bents were constructed of old timber, and that all the piling under the mud-sills was old and greatly decayed, and that it was the original piling in the bridge.

To further strengthen this proof and show that the wrecked part of the bridge had not been rebuilt as defendant claimed, the evidence complained of was introduced to show that the structure under the foundation was the same in the wrecked as in the remaining part—that is, that the piling under the foundation sills of the standing or old part was the same as under the alleged rebuilt part—and also to show that the last five bents in the wrecked part had not been rebuilt, but were of the same age, condition, construction, etc., as the remaining part. When Lovell testified that the part not in the wreck was of the same age, construction, and condition as the five southerly bents,—that they were built the same,—that the timbers were of the same age and condition,—that some were sound and some were worthless,—it is plain that the object of this evidence was not to show that the defects referred to in the standing part contributed to the injury, but to show that the last five bents were of the same age, condition, and construction as the remaining part, and as a consequence had not been rebuilt as the defendant claimed and sought to prove.

It must be clear, then, that the objection to the evidence in view of the circumstances, and the purpose for which it was offered, that the plaintiff was not seeking to attribute the accident to defects in other portions of the bridge not involved in the wreck, but to show that the claim of the defendant that the wrecked part had been rebuilt about a year before, and was of sufficient strength and construction to withstand the passage of trains over it, was not well founded. Whether, therefore, the defects testified to as to the standing portion of the bridge were connected with the place of injury and contributed to produce it, it is not necessary for us to consider, as that aspect of the question was not sought to be proven by the evidence.

Now, as to the other evidence of Lovell, it was plainly
admissible.  It showed that seventy-six bolts through the
stringers in the immediate neighborhood of the wrecked
part of the bridge were loose and without any nuts on
them.  When it is considered that the bridge as shown by
the bill of exceptions is one continuous structure made of
bents and stringers, without any longitudinal braces, con-
nected with each bank of the lake, and no part wholly in-
dependent of the other, the evidence was plainly admissi-
ble within the issue to be tried as made by the pleadings;
but waiving this view, if we adopt the theory of the de-
fendant, that defects in the standing portion of the bridge
bear no relation to the wrecked part as evidence because of
remoteness, it would not apply to this evidence, for the
reason that when it is considered that one bent was out of
place as much as six inches, and that adjacent to it and
the wrecked part no less than seventy-six bolts were loose
and without nuts, in a bridge without longitudinal braces,
such evidence does tend to show an element of danger and
negligence connected with the place of injury.

The next objection is to an experiment made in the pres-
ence of the jury.  It appears the defendant claimed that
the accident was due to the displacement of a rail wrong-
fully loosened from the track, and thrown diagonally
across the track by some evil-disposed person; and in sup-
port of that contention introduced the rail in court, which
showed upon the outside of its bottom flange a scar which
defendant claimed appeared to have been made by colli-
sion of the pony-truck wheel in front of the engine coming
in contact with the flange of the rail as it lay diagonally
across the track.  The plaintiff in rebuttal produced in
court a wheel made to run on rails, and an iron rail, and
requested the witness to show to the jury the manner in
which the wheel would come in contact with the rail under
the circumstances claimed by the defendant.  The section
of rail introduced by the plaintiff was the same in size, di-
mension, measurement, and weight as the rail introduced

by the defendant, and the court personally measured the wheel, and ordered that the record be made to show that it was a wheel with flange and tread made to run on rails like a locomotive engine wheel, and that it was twenty-six inches in diameter, including the flange. The only difference between the wheels is that the pony-truck wheel was thirty-three inches in diameter including the flange, but both were used for similar purposes and rolled upon similar tracks.

The bill of exceptions shows that the witness, McCoy, placed the section of rail across defendant's rail as claimed by its theory the rail was placed by the alleged evil-disposed person, and then rolled the flanged wheel toward and against it on the defendant's rail, and claimed to demonstrate in the presence of the jury that a wheel thus approaching a crossed rail could only strike it on the ball or upper part, and not on the flange or bottom part, where the scar appeared. He also testified that the larger the diameter of the approaching wheel the further it would be from striking the flange of the cross-rail, and that there were no marks or scars on the ball of defendant's rail.

Experiments to be admissible must be based on conditions similar to those existing in the case on trial. In *Eidt* v. *Cutter*, 127 Mass. 522, in an action for an injury to the plaintiff's house, the question in controversy, and upon which the parties had introduced the testimony of experts, was whether the injuries were caused by fumes and gases from the defendant's copperas works, or by emanations from a sewer near the premises. The plaintiff's experts were allowed to give the grounds and reasons of their opinions, including the details of experiments made by them elsewhere than on the premises in question, under conditions and circumstances which, as they testified, were as nearly as possible like those surrounding the plaintiff's house in the absence of the sewer, and it was held that the defendant had no ground of exception.

In *Brooke* v. *Chicago, etc. R. R. Co.* 81 Iowa, 504, it was held that evidence as to experiments of a witness in placing his foot between the rails to show where it would be caught is admissible when the witness who made the experiment and the shoe worn by the deceased at the time of the accident, are before the jury.

In *Smith* v. *State*, 2 Ohio St. 511, it was held competent for the defense to prove similar experiments with different results, made in another place but under like circumstances. (*Sullivan* v. *Comw.* 93 Pa. St. 284; *Boyd* v. *State*, 14 Lea (Tenn.) 161; *Williams* v. *Taunton*, 125 Mass. 34.) There seems to be some hesitation in receiving evidence of experiments or demonstrations; and from the liability to misconception and error, there can be no doubt that it is essential that the experiments or demonstrations should be made under similar conditions and like circumstances. In all cases of this sort, very much must necessarily be left to the discretion of the trial court; but when it appears that the experiment or demonstration has been made under conditions similar to those existing in the case in issue, its discretion ought not to be interfered with. In the present case the things used for the purpose of the demonstration were similar in size, material, and position, and were operated under conditions similar to the thing sought to be demonstrated.

It seems to us, as counsel contend, that a flanged wheel, standing perpendicular with the rail upon which it is placed and rolled forward, will strike another rail crossing this one upon which it is rolling in precisely the same manner that it would were it attached to the end of an axle.

Under the circumstances we are not prepared to say that there was any error.