Submitted on brief for appellant and on the record for respondent,
    at Pendleton, October 31, reversed and remanded December 20,
    1921.

# HALL *v.* BROWN.

### (202 Pac. 719.)

**Witnesses—Error to Permit Witness to Refresh Memory by Writing
    not Made by Him and to Admit It in Evidence.**

1. Under Section 859, Or. L., providing that a witness may re-
fresh his memory by anything written by himself, etc., it was
error to permit a witness to refresh his memory as to the quantity
of grain raised by him by reference to a memorandum made by the
threshers and not made under the witness' direction, and to admit
such memorandum in evidence.

**Witness—Cannot Produce Memorandum Where He has Independent
    Recollection of Fact.**

2. A witness having an independent recollection of a fact is not
permitted to produce a memorandum under Section 859, Or. L., au-
thorizing a witness to refresh his memory by anything written by
himself, etc.

**Witnesses—Party Producing Witness cannot Use Writing Used to
    Refresh Recollection or Read It to Jury, but Opposite Party
    may.**

3. A memorandum used by a witness to refresh his memory must
be produced for the inspection of the adverse party, who may cross-
examine the witness upon it, and may read it to the jury, but that
privilege is not accorded to the party producing the witness.

**Landlord and Tenant—Amount of Grain Grown on Other Land not
    Admissible When Conditions not Shown to be Similar.**

4. In a tenant's action against the landlord for ousting him from
possession and destroying his crop, the testimony of a witness as to
the amount of grain grown by him the same year was not admis-
sible, where it was not shown that the variety of oats sown, the
amount per acre, the method of cultivation employed, the time they
were sown, or the quality of the soil was similar.

**Evidence—Testimony That Witness Judges or Presumes Conditions
    of His and Plaintiff's Crops Were Similar is Inadmissible as
    Conclusion.**

5. Testimony of a witness that he "judges" that plaintiff's method
of preparing his land for a crop was nearly the same as his own,
or that he "presumes" defendant sowed his grain broadcast, is not
admissible to show the similarity of conditions in an action for the

---

2. Right to use memoranda to refresh memory, and right of op-
posite party to inspect same, see notes in 98 **Am. Dec.** 619; 35 **Am.
Rep.** 56; 9 **Ann. Cas.** 560.

destruction of plaintiff's crop, as the witness should state the facts, and not give his opinion.

Evidence—Admission of Evidence of Experiments or Similar Occurrences Discretionary, but not Unless Conditions Substantially Alike.

6. At best, it is within the discretion of the court to admit any testimony whatever about experiments or similar occurrences, but in any event the conditions must appear to be substantially the same, and unless this appears it is not within the discretion of the court to admit the evidence.

Damages—Measure of Damages for Destruction of Growing Crop is Value at Time of Trespass.

7. In a tenant's action against his landlord for ousting him from possession and destroying a crop planted by him, the measure of damages for the destruction of the crop was its value at the time and place of the trespass, and not its value when matured.

Damages—Evidence as to What Crop Destroyed Would have Produced may be Given by Qualified Witnesses.

8. Though the measure of damages for destruction of a growing crop is its value at the time of the trespass, evidence may be given by those qualified to express an opinion about what such a growing crop would produce under the conditions attendant upon its planting and growth.

Landlord and Tenant—Instruction That Settlement was not an Issue in the Case Held Misleading.

9. In a tenant's action against his landlord for ousting him from possession and destroying his growing crop, where the defense was that it was agreed that the tenant should surrender possession and the landlord should pay him a reasonable compensation for his labor and the grain used for seed, an instruction that defendant's testimony showed there was no subsequent settlement, and therefore that was not an issue in the case, was liable to mislead.

Landlord and Tenant—Agreement That Tenant Would Surrender and Landlord Pay Him for his Work Terminates Lease and Prevents Action for Trespass.

10. If a landlord and tenant agreed, after the tenant had planted a crop, that the tenant should give up the land and the landlord should pay him a reasonable compensation for his labor and the seed, the lease was thereby terminated, and the tenant could only rely upon the new agreement, and could not sue for trespass for the destruction of the growing crop.

---

6. On making experiments in presence of jury as a mode of adducing evidence, see notes in 7 **Ann. Cas.** 216; Ann. Cas. 1912B, 296; 15 **L. R. A.** 221.

On experimental evidence as affected by similarity or dissimilarity of conditions, see notes in 53 **Am. St. Rep.** 375; 8 **A. L. R.** 18.

7. Measure of damages for injury to growing crops, see notes in 140 **Am. St. Rep.** 309; 6 **Ann. Cas.** 949; 12 **Ann. Cas.** 782.

From Harney: DALTON BIGGS, Judge.

In Banc.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Biggs & Biggs* and *Mr. F. E. Swope.*

For respondent the case was submitted on the record.

BURNETT, C. J.—By agreement of the parties this case was submitted on the record and brief for the defendant and without brief on the part of the plaintiff. The parties are in substantial accord that about March 1, 1915, the defendant leased to the plaintiff for one year a forty-acre tract of land in Harney County, whereby the plaintiff was to plow and seed the land and receive all of the crop raised thereon during the year; and that the defendant was to furnish the teams necessary for the work. The plaintiff avers that during said month of March, 1915, he plowed and planted twenty acres of the tract to oats and about April 1, 1915, the defendant with force ousted him from the possession of the land, destroyed his growing crop and prevented him from plowing and planting the remainder of the tract. The plaintiff claims to have expended a total of $237 for seed and labor. Concluding his complaint, he says that "by reason of the wrongful acts of defendant, as herein complained of, plaintiff's growing crop was lost; also the money he had invested in seed grain, as well as his labor in plowing, preparing the seed-bed and planting his crop. By reason whereof, plaintiff has been and is damaged in the sum of $1,000."

All the allegations of the complaint are denied by the answer, except the leasing. The substance of the answer is, that after the plaintiff had plowed, harrowed and seeded approximately eighteen ·acres, the contract was rescinded by mutual agreement of the parties, in consideration of the defendant's agreeing to pay the plaintiff the reasonable value of his labor in plowing harrowing and seeding the land, together with the reasonable value of said seed, in pursuance of which the plaintiff surrendered the premises to the defendant and relinquished any claim he had to the crop grown on the land during the year. The answer claims that the defendant paid the plaintiff in full for all his work, labor and material. The new matter of this pleading is denied by the reply. The end of the litigation in the Circuit Court was a judgment for the plaintiff, from which the defendant appealed.

1–3. At the trial G. W. Johnson, testifying as a witness for the plaintiff, stated in substance that he farms in the neighborhood almost the same character of land as that in question; that he raised a crop of oats and rye on his land during 1915; and that his land was sub-irrigated from the hill only, during the spring run-off of snow. Asked if he had a memorandum showing the number of bushels that he thrashed off twenty acres that year, he said he had. He was told to refer to the memorandum and to state how many bushels of oats and how many of rye he thrashed that year. He answered, "There is 113 bushels of rye and 837 bushels of oats." Counsel for plaintiff then offered the memorandum in evidence. It was objected to by defendant's counsel on the ground that it was immaterial and also for the further reason that it was inadmissible, as it was some-

thing the witness used for refreshing his memory. The objection was overruled and the memorandum was introduced in evidence, exception by the defendant being allowed. The memorandum is a statement made by the firm that thrashed grain for Johnson, and does not appear to have been made by Johnson or under his direction. In other words, it is an unverified statement of strangers to the action. Section 859, Or. L., is here set down:

"A witness is allowed to refresh his memory, respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing; but in either case the writing must be produced, and may be inspected by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So, also, a witness may testify from such a writing, though he retain no recollection of the particular facts; but such evidence shall be received with caution."

A witness having an independent recollection of a fact is not permitted to produce a memorandum, such a paper being used only for the purpose of refreshing his recollection. Moreover, the memorandum to be used must be one made by himself or under his direction, and this must appear in order to authenticate the paper. While the memorandum must be produced for the inspection of the adverse party, who may cross-examine the witness upon it and may read it to the jury, that privilege is not accorded to the party producing the witness. It was erroneous to admit the memorandum in evidence.

4, 5. Continuing, the witness Johnson testified as follows, according to the bill of exceptions:

"Q. Did you observe the manner in which this land had been cultivated and prepared and planted and seeded to crop by Mr. Hall?

"A. I judge it was pretty nearly the same because some of it was new plowing and some of mine was new plowing.

"Q. Have you had several years' experience in cultivating that kind of land?

"A. Not at that time I didn't have, because I hadn't been there but just a few years.

"Q. Did you observe Mr. Hall's method of cultivating, as compared with your own cultivation?

"A. I would judge at the time it was very near the same. I sowed my grain broadcast and I presume he did; I don't know as to that.

"Q. Would you say that the seed bed was well prepared from its appearance, when it was planted?

"A. It seemed to be; yes. * *

"Upon cross-examination, the witness testified that his own land was sub-irrigated from the hill, and that he could not say whether or not the land that plaintiff had cultivated was sub-irrigated."

The defendant then moved the court to strike out that portion of the testimony of Johnson as to the crop produced on his own land, as irrelevant, for the reason that such testimony did not show that the land of the witness was of the same character and quality, or that the crop thereon was grown under the same conditions as the land that the plaintiff was cultivating. This motion was denied and an exception allowed. The testimony of Johnson on that point was in substance an attempt to narrate a similar occurrence. Such testimony is very closely analogous to evidence of experiments and is governed by similar rules. Similar occurrences, like experiments, are admissible under certain circumstances for the purpose of showing the probable result of the transaction in question, but to be admissible it

must be shown that the conditions are substantially like those present in the matter in dispute. First, in the instant case, as to the grain sown, it is alleged in the complaint, but denied by the answer, that the plaintiff sowed oats. But even then, the variety of oats sown, the amount per acre, the method of cultivation employed, the time they were sown, and the quality of the soil are not shown to be similar. All that appears is the opinion of the witness on those subjects. He "judges" that Hall's method was very nearly the same as his own. He "presumes" that Hall sowed his grain broadcast, but does not know. He says that his own land was sub-irrigated from the hill, but could not say whether the premises in question were sub-irrigated or not. The opinion of the witness as to whether the conditions under which he raised a crop were the same as those applicable to Hall is not competent proof. The facts should be stated, as to what he did and what Hall did, so that the court could be in a situation to draw the conclusion that they were similar. The rule is thus stated in the syllabus to *Leonard* v. *Southern Pacific Co.*, 21 Or. 555 (28 Pac. 887, 15 L. R. A. 221, note):

"Experiments and demonstrations used in evidence should be made under conditions similar to those attending the fact to be illustrated; and when this rule is observed, the discretion of the trial court in allowing the result of such experiments to go to the jury will not be reviewed in the absence of abuse thereof."

See, also, *Kohlhagen* v. *Cardwell*, 93 Or. 610 (184 Pac. 261, 8 A. L. R. 11), and *State* v. *Holbrook,* 98 Or. 43 (188 Pac. 947, 192 Pac. 640, 193 Pac. 434).

6. The principle is, that at best it is within the discretion of the court to admit any testimony what-

ever about experiments or similar occurrences. But in any event, the conditions must appear to be substantially the same. It is not within the discretion of the court to admit evidence about experiments, unless the conditions are substantially alike.

7, 8. Another exception relates to the measure of damages. Without quoting at length the contentions of counsel for plaintiff, they seem to indicate that the measure of damages should be the value of the matured crop. The rule is thus stated in 17 C. J. 887:

"The measure of damages for the entire destruction of a growing crop is its value at the time and place of destruction. A similar rule applies in case of the destruction of a matured crop. The measure of damages to a growing crop which is injured but not rendered worthless is the difference between the value of the crop before and after the injury at the time and place thereof. * * According to the great weight of authority, the amount of loss must be determined as of the time of the injury; hence the market value at the time of maturity does not in itself furnish a proper measure of damages, although there is language in some of the decisions susceptible of such construction. While the rules as stated are simple, some difficulty has arisen as to the admissibility and effect of evidence as to the value at the time of injury. It is obvious that the true value of a growing and unmatured crop must be arrived at from a consideration of numerous facts, among which are the kind of crops which the land will ordinarily yield, the probable yield under proper cultivation, the average yield per acre of similar land in the neighborhood cultivated in the same way, the stage of advancement at which the crop was when injured or destroyed, the expenses which would have been incurred after the injury in fitting the crop for market and transporting it to market, the market value of the crop, the market value of the probable crop without the injury at the time of maturity, and

circumstances bearing on the probability of maturing the crop in the absence of the injury."

This is supported by a great wealth of precedents cited in the notes appended to the text, among others, one from our own state, *Anderson* v. *Adams*, 43 Or. 621 (74 Pac. 215), where Mr. Chief Justice MOORE said:

"The wheat was sown with the expectation of harvesting it, and the measure of damages for the loss of the crop is more than the cost of plowing and the value of the seed, and is equal to the value of the crop in the condition it was before it perished."

As to damages, the ultimate question to be determined on the theory of the complaint is the value of the growing crop at the time and place of the trespass. It is not to be confounded with the value in a matured condition, although evidence may be given by those qualified to express an opinion, about what such a growing crop would produce under the conditions attendant upon its planting and growth.

9, 10. The instruction "that the testimony of the defendant himself shows that there was no subsequent settlement of these matters, and therefore that is not an issue in this case," was liable to mislead the jury. If the parties agreed that the plaintiff should give up the land and that the defendant should pay him a reasonable compensation for his labor and the grain used for seed, that would terminate the lease and the plaintiff would be compelled to rely upon the new agreement of the defendant to pay him as stated. The later contract as thus stated would defeat his action for trespass and remit the plaintiff to his action on that contract.

For the errors indicated, the judgment of the Circuit Court is reversed and the cause is remanded for further proceedings.     REVERSED AND REMANDED.