Argued October 13, 1954, reversed with instructions February 2,
petition for rehearing denied March 16, 1955

LEAP *v.* ROYCE ET AL.

279 P. 2d 887

*John R. Latourette* and *Lincoln Stuart Ferris,* of Portland, argued the cause and filed briefs for the appellants.

*Arthur S. Vosburg,* of Portland, argued the cause for respondent. On the brief were Flegel, Vosburg, Joss & Hedlund.

Before WARNER*, Acting Chief Justice, ROSSMAN, TOOZE and PERRY, Justices.

PERRY, J.

---
* Chief Justice when this decision was rendered.

The plaintiff was attempting to cross N.W. Front avenue, a public street in the city of Portland, when he was struck by a taxicab owned by the defendants Royce, and operated by the defendant Jan J. Angelos. At the close of the plaintiff's evidence in the trial court the defendants moved for a judgment of involuntary nonsuit, which motion the trial court granted. Subsequently the plaintiff moved that the judgment of involuntary nonsuit be set aside and a new trial granted, which motion was allowed. From this ruling granting a new trial the defendants have appealed.

The facts in this case are that the plaintiff Leap, a taxicab driver, had on February 11, 1951, at about 10:30 o'clock in the evening, driven a passenger to a dock which is reached by a ramp leading from N.W. Front avenue in a generally northwesterly direction from a point where N.W. 14th avenue connects with N.W. Front avenue. Northwest Front avenue is a four lane street running northwesterly and southeasterly, with two lanes for traffic running northwesterly and two lanes for traffic running southeasterly. A map introduced into the evidence is herein set out to aid in describing the setting involved in this case. The map shows N.W. Thurman street and N.W. 14th avenue entering into a highway connecting with N.W. Front street, which is neither designated as N.W. Thurman street nor N.W. 14th avenue. However, for the purposes of this case, and in describing the scene of the accident, N.W. 14th avenue is considered as continuing to a junction with N.W. Front avenue. After plaintiff had discharged his passenger, he proceeded back down the ramp from the docks to Front avenue where he observed across the street, near the intersection of N.W. Front avenue and 14th avenue, a collision between a locomotive and an automobile. The

locomotive is designated by the drawing on the map marked "24"; the automobile is designated by the drawing on the map marked "17". Plaintiff parked his taxicab on the northerly side of Front avenue and proceeded on foot to the scene of the accident. After spending a short time about the scene of the accident, plaintiff, together with another taxicab driver, again attempted to re-cross N.W. Front avenue, walking in a diagonal direction from the scene of the collision

between the locomotive and the automobile to where his car was parked near the easterly side of the ramp. As plaintiff and his companion proceeded to re-cross N.W. Front avenue, plaintiff looked to his left and noticed the defendants' taxicab approaching from his left at a distance he believed was ample for him to cross the street. Plaintiff also stated that he looked to the right and noticed an automobile approaching from that direction. Before completely crossing the southwesterly lane of N.W. Front avenue, or just after crossing into the adjoining lane to the north, plaintiff was struck by the defendants' taxicab and suffered severe injuries.

The factual basis of the defendants' motion for a nonsuit in the trial court was that approximately 130 feet northwesterly from where the plaintiff was attempting to cross N.W. Front avenue the city had provided a marked pedestrian crosswalk across the street with a large pole placed at either end thereof to which a switch was fastened controlling the traffic light in the center of the crosswalk. A pedestrian pressing the switch could change the traffic light (which normally stayed at caution for motor vehicles using the street) to red for the purpose of stopping all traffic upon the highway until the pedestrian could safely cross N.W. Front avenue upon the marked crosswalk; that where plaintiff was attempting to cross the street there was no marked or unmarked crosswalk and the legal result of the plaintiff in so crossing N.W. Front avenue, in violation of an ordinance of the city of Portland duly authorized by state law, is that he was guilty of negligence per se, which negligence was a proximate cause of his injury and barred his recovery.

The plaintiff's position is that under the state law where the plaintiff attempted to cross there is an un-

marked crosswalk which made his actions lawful, and even though it should be held that it is not a lawful crosswalk, and he was guilty of violation of the city ordinance and negligent per se, it is a question for the jury to decide whether or not a violation of the ordinance making the plaintiff negligent as a matter of law contributed proximately to his injuries.

The trial court held that the violation of the ordinance was negligence per se, but that whether or not the violation of the ordinance by the plaintiff proximately contributed to the plaintiff's injury was a question of fact to be submitted to a jury, and, therefore, granted plaintiff a new trial.

Section 115-301 (t), OCLA, as amended by ch 279 Oregon Laws 1947, now ORS 483.006 (4), defines a crosswalk as follows:

"(4) 'Crosswalk' means:
"(a) Except as provided in paragraph (b) of this subsection, that portion of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the street or highway measured from the curbs or, in the absence of curbs, from the edges of the traveled roadway to the property lines; or the prolongation of the lateral lines of a sidewalk, to the sidewalk on the opposite side of the street, if the prolongation would meet such sidewalk; or
"(b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface of such roadway, conforming in design to standards prescribed by the commission. Whenever marked crosswalks have been indicated, such crosswalks and no other shall be deemed lawful across such roadway at that intersection."

■ The evidence in this case shows that there were sidewalks, or pedestrian lanes, on the northeasterly

side of N.W. Front avenue, but there were no sidewalks of any kind or nature on the southwesterly side of N.W. Front avenue. Therefore, there could be no unmarked crosswalks at this intersection of N.W. 14th avenue and N.W. Front avenue running northeasterly and southwesterly. The statute clearly sets forth in all situations therein described, that to be a legal unmarked crosswalk there must be a pedestrian walk upon each of the opposite sides of a street. We can draw but one conclusion, and that is that at this intersection there was provided but one lawful crosswalk, the duly marked crosswalk.

■ Section 115-340, OCLA, now ORS 483.210, authorized local authorities in their respective jurisdictions to prohibit by ordinance any pedestrian from crossing any street or highway at any place other than within a marked or unmarked crosswalk. The city of Portland, acting upon this authorization, passed Ordinance No. 86409, which reads in part as follows:

> "(e) Within 150 feet from an existing marked or unmarked crosswalk it shall be unlawful for any person to cross or attempt to cross any street or highway within the City of Portland at any other place than at such marked or unmarked crosswalk. Every pedestrian crossing a roadway at such other place shall yield the right of way to a vehicle upon the roadway.
>
> "(f) The provisions of this section shall not relieve the driver of a vehicle or the pedestrian from the duty to exercise care."

This ordinance is absolute and without qualification. It is unlawful for any pedestrian to cross any street or highway in the city of Portland at any point other than upon a crosswalk, if there is a crosswalk within 150 feet of the point of crossing. If the pedestrian does cross in the prohibited area, then he is proceeding un-

lawfully in violation of the mandate of the ordinance. We are of the opinion that when the legislature permitted cities to pass ordinances making it unlawful to cross streets at undesignated places, it had in mind the prevention of just such an accident as here occurred.

The plaintiff in this case violated a positive duty required for his safety. The trial court correctly held that the plaintiff, having violated the ordinance in question, was negligent as a matter of law, and if such negligence on the part of the plaintiff contributed proximately to the happening of the accident, even though slightly, it would bar his recovery. *Senkirik v. Royce et al.,* 192 Or 583, 599, 235 P2d 886.

This brings us to the question of whether or not the plaintiff in violating an ordinance, the very purpose of which was to eliminate just such accidents, contributed proximately to his injuries as a matter of law.

The plaintiff relies upon the general rule, that a person may be negligent per se yet it still remains for a jury to say whether or not such negligence contributed to the accident and resulting injuries. *Ellenberger v. Fremont Land Co. et al.,* 165 Or 375, 107 P2d 837; *Landis v. Wick,* 154 Or 199, 57 P2d 759, 59 P2d 403; *Martin v. Oregon Stages, Inc.,* 129 Or 435, 277 P 291. ''As said by Professor Beale in his very valuable article on the proximate consequences of an act, 33 Harvard Law Review, 633, 637:

'' 'Where the act is the failure merely of a legal duty, causation is established only when the doing of the act would have prevented the result; if the result would have happened just as it did whether the alleged actor had done his duty or not the failure to perform the duty was not a factor in the result, or, in other words, did not cause it.' ''

*Eklof v. Waterston,* 132 Or 479, 487, 285 P 201, 68 ALR 1002. "* * * It has been said that there is no substantial distinction or essential difference between negligence for which defendant is responsible and contributory negligence; the standards and tests for determining contributory negligence ordinarily are the same as those for determining negligence, and the rules of law applicable to the former are, in general, applicable to the latter. The distinction lies in that negligence involves a risk of injury to another whereas contributory negligence involves a risk of injury to the one injured. As in the case of defendant's negligence, contributory negligence may be due to either acts of omission or acts of commission." 65 CJS 707, Negligence, § 116.

In each of the above cases cited by the plaintiff, wherein we held that the issue of proximate cause should be determined by a jury, the facts are considerably different from those presented in the present matter before this court.

In the case of *Martin v. Oregon Stages, Inc.,* supra, the plaintiff had stopped his truck to adjust a fog light that was loose and waving to and fro as he drove along the highway. It was a dark night, it was raining, and there was considerable traffic at the time and place; he stopped his truck partially upon and partially off of the highway. One of the defendant's allegations of contributory negligence was that the plaintiff's truck was more than six feet in width and was not equipped with a *white light on the left side as provided by statute,* and that the plaintiff was guilty of contributory negligence in violating the statute by his failure to have his truck properly equipped with such a light. The plaintiff's truck was equipped with

three rear lights, all colored, but a white light was not placed upon the side in conformity with the law so that it could be seen either from the front or rear, which fact was admitted by the plaintiff. We held that whether or not the failure to have the white light was a contributing cause of the plaintiff's injuries was, under the circumstances, a matter to be determined by the jury. In other words, there was evidence that there was ample warning to the driver of the defendant's vehicle of the presence of the plaintiff's vehicle upon the highway, and this court could not say as a matter of law that a white light on the side of the vehicle, as required by law, would have prevented the accident.

In the case of *Landis v. Wick,* supra, there was a conflict of evidence from which reasonable deductions could be made that regardless of the fact that the rider of the bicycle did not have a proper reflector upon his bicycle, as required by statute, it was still light enough so that the plaintiff was plainly visible to the defendant driver of the vehicle, and whether or not a reflector would have served its intended purpose of giving any more warning of the plaintiff's presence upon the highway and would have prevented the occurrence was a question of fact for determination by a jury.

In the case of *Ellenberger v. Fremont Land Co. et al.,* supra, the plaintiff had parked his truck and trailer partially on and partially off the highway to repair a tire. The lights of the vehicle were burning, but there was no tail light upon the rear of the trailer, as required by law. However, there was placed thereon a red reflector. In this case we said it was a very close question, but in holding that there was a question of

fact as to proximate cause to be determined by the jury, we stated on page 385 of the opinion:

"* * * Of course, the purpose and object of the law requiring a tail light is the protection and safety of those who travel on the public highways during the night. For the tail light required by the motor vehicle act, the plaintiff substituted a reflector four inches in diameter. However, if the reflector did, in fact, apprise Nixon of the existence of the truck and trailer on the highway, in time so that, in the exercise of reasonable care, he could have passed around it in safety, it cannot be said that the failure to have the tail light had any causal connection with the injuries of which plaintiff complains."

It may be readily seen from the above cases that the purpose of each statutory requirement was to give notice that the plaintiff was upon the highway. In those cases the distinction is quite clear, the purpose of the statutes being to give notice of the plaintiff's presence. If his presence was in fact known, or should have been known under all of the circumstances existing, it then became immaterial as a causation factor whether or not the specific statutory requirements were complied with.

■ Under the present situation, the ordinance was designed to prevent the plaintiff from being in the place where he was injured; therefore, it must be conceded that plaintiff in this case was continuously in violation of this ordinance by his failure to use the lawful crosswalk. Continued negligence up to the very instant of an accident and injury bars recovery. *Dorfman v. P.E.P. Co.*, 132 Or 648, 286 P 991.

The courts, however, are not in accord on whether or not, where there has been an express violation of a statute or an ordinance, and the plaintiff is guilty of

negligence as a matter of law, he should be barred from recovery. "* * * Such questions as the proximate cause of the accident, whether the defendant saw the pedestrian in time to avoid the occurrence, and the degree of care or vigilance exercised by the motorist, may make the issue one of fact for the jury to decide in the light of all the surrounding circumstances." 5 Am Jur 762, Automobiles, § 455; *Ivy v. Marx,* 205 Ala 60, 87 So 813, 14 ALR 1173; *Murphy v. Homans,* 286 Ky 191, 150 SW2d 14.

We are of the opinion that where a statute or ordinance is designed for the prevention of the very accident which occurs, and the evidence in this case shows that the occurrence could not have happened except for the violation of the express conditions of the ordinance, recovery must be denied. *Meincke v. Oakland Garage, Inc. et al.,* 11 Cal2d 255, 79 P2d 91; *Turner v. Good,* 167 Wash 27, 8 P2d 414.

It is true, as argued by the plaintiff, that the ordinance provides "the provisions of this section shall not relieve the driver of a vehicle or the pedestrian from the duty to exercise care". "Care", of course, is a relative matter depending upon all of the circumstances of a given situation, and applies to both parties; however, the negligence of the defendants is immaterial when it appears certain that the plaintiff was negligent and his negligence contributed to his injuries. To hold otherwise than as we have held in this matter would be to sanction disobedience of a program specifically designed to meet the demands of public protection made necessary by the use of our highways in this modern age of transportation.

This case is reversed with instructions to reinstate the trial court's previous order of involuntary nonsuit.