Argued March 13, affirmed July 9, petition for rehearing denied
July 30, 1958

# LOIBL *v.* NIEMI
327 P. 2d 786

*Duane Vergeer* argued the cause for appellant. On the briefs were Vergeer & Samuels and Charles S. Crookham, Portland.

*Elliott B. Cummins* argued the cause for respondent. On the brief were Nott, Cummins and Devlin, McMinnville.

Before PERRY, Chief Justice, and ROSSMAN, WARNER and McALLISTER, Justices.

WARNER, J.

The defendant, Niemi, appeals from a judgment for damages for the death of W. H. Loibl as a result of a collision between his tractor and defendant's automobile. The plaintiff is the widow of Loibl and appears herein as the administratrix of her husband's estate.

The complaint alleges that on October 7, 1954, after 6:00, p. m., the defendant was driving and operating his 1950 Buick automobile northerly along the Lafayette-Hopewell road, a public highway, at a point approximately a mile and one-half north of the town of Hopewell; that at the same time and place the decedent, W. H. Loibl, was driving a 1954 International farm tractor along the same highway in the same direction; and that the defendant carelessly and negligently drove his automobile into and against the decedent's tractor with such force and violence as to cause Mr. Loibl's death.

The defendant, after a general denial, alleges as his principal defense that at the time of the collision, objects along the highway were not visible for 500 feet without artificial illumination and at the time it oc-

curred, the decedent was operating the tractor in a careless and negligent manner such as to be the sole and proximate cause of decedent's death and in the following particulars: in operating the tractor at the time without the lighting equipment required by law; and by displaying a white light at the rear thereof.

The transcript discloses the following facts: the place of the accident was on a level stretch in the road; that the road was paved to a width of 19 feet, marked with a yellow center line, and had relatively narrow shoulders; that the highway was straight for a half mile or so north of the point of impact, and also straight for a distance of 465 feet south of the same point; that at this distance south, a gradual curve to the southeast begins; that by reason of the gradual character of the curve, there is unobstructed visibility to a driver moving northward for 715 feet before reaching the place of collision; that at the time in question, both vehicles were proceeding in a northerly direction on the right or easterly side of the highway; that decedent's tractor was some distance ahead of defendant's Buick sedan; that both drivers were alone in their respective conveyances; and there were no eye-witnesses to the accident, other than defendant. The record establishes that official sunset time that day was 5:43, p. m., Pacific Standard Time.

The time of day is a decisive element, bearing, as it does, upon the condition of the lights on both vehicles and particularly upon the want of statutory lights on decedent's tractor. The importance of the time of the accident is brought to the fore by reason of defendant's claim of decedent's contributory negligence growing out of his alleged failure to have his tractor equipped with proper lights.

There is some difference of opinion among the wit-

nesses as to the degree of visibility prevailing at the time. Many claimed that the collision happened at twilight, that is, between the hours of daylight and darkness, and that silhouettes or outlines of objects were visible without the aid of artificial light.

The defendant's version is that he left his home about three and one-half miles from the scene of the accident about 6:15, p. m.; that he travelled at a speed variously described as 40, 45 or 50 miles per hour with his headlights on; that he was so travelling when he noticed what appeared to be a white headlight on the highway in front of him. This was noticed as he came out of a curve into the straight stretch of the highway. He claims that there were no red lights and he assumed that the object ahead in the road bearing the white light was either a vehicle with one headlight or a motorcycle coming toward him. He says he was approximately 50 or 75 feet from the light when he realized that he was mistaken in the object and applied his brakes, but not in time to avoid collision between his car and decedent's tractor.

Defendant's first assignment charges that the court erred in denying his motion for a directed verdict after the parties had rested.

The cardinal question projected by this assignment of error is whether decedent's violation of the statutory requirements relative to lighting devices on his tractor was negligence as a matter of law contributing to his injury.

It is defendant's position that the uncontradicted evidence shows that Mr. Loibl immediately before the collision was operating his vehicle upon the highway during hours and under conditions when lights were required on motor vehicles and did so without having the lighting equipment required by statute.

Defendant makes this the basis of his motion for a directed verdict, arguing that such a situation warrants a conclusion that the plaintiff's violation of these lighting directions renders him negligent per se; that such negligence was the proximate cause of his death and, therefore, the court should have held that Loibl was contributorily negligent as a matter of law. Such is the nub of defendant's argument.

■ The question whether plaintiff has been guilty of contributory negligence as a matter of law is generally one for the jury and "becomes a question of law when, and only when, from the facts, reasonable men can draw but one inference and that inference points unerringly to the negligence of plaintiff contributing to the injury. In all other cases the question of contributory negligence is one of fact for the jury." *Martin v. Harrison,* 182 Or 121, 137, 180 P2d 119, 186 P2d 534; *Clark v. Strain,* 212 Or 357, 319 P2d 940, 941, and cases there cited.

■ Moreover, on a motion for a directed verdict, the evidence must be viewed in a light most favorable to the plaintiff. *Martin v. Harrison,* supra, *Edvalson v. Swick,* 190 Or 473, 480, 227 P2d 183; *Clark v. Strain,* supra.

■ Thus, it is obvious that the first phase of such a determination calls for an examination of testimony touching upon the existence of conditions at or prior to the collision stipulated by ORS 483.402, requiring the use of light on his vehicle. It follows that if there was no duty to illuminate the lighting devices at a given time, the presence or absence of the items of equipment required by the motor code becomes a matter of secondary or no importance, even though it be found that the Loibl tractor was wanting in the lighting equipment required by law. Where the act claimed

to constitute negligence was merely failure to perform a legal duty, causation is established only when the doing of the act would have prevented the resulting accident. *Eklof v. Waterston,* 132 Or 479, 487, 285 P 201, 68 ALR 1002; *Staples v. Senders,* 164 Or 244, 255, 96 P2d 215, 101 P2d 232; *Leap v. Royce,* 203 Or 566, 573, 279 P2d 887.

It is this posture of the case which gives much importance to the element of the time of Mr. Loibl's death and the conditions of visibility prevailing at and immediately before defendant's automobile collided with decedent's tractor.

Before its amendment in 1957, and as it was at the time of the accident, ORS 483.402 read, as far as pertinent:

"(1) Every vehicle upon a highway within this state at any time from a half-hour after sunset to a half-hour before sunrise and at any other time when there is not sufficient light to render persons and vehicles clearly discernible on such highway at a distance of 500 feet ahead, shall display lighted lamps and illuminating devices as specified in ORS 483.402 to 483.442, subject to the specific exceptions with respect to parked vehicles."

Thus, the decedent was mandated to have the required illuminating devices on his tractor lighted at 6:13, p. m., on the day of the accident, or before that time, if there was not sufficient light to render persons or vehicles clearly discernible on the highway at a distance of 500 feet ahead.

The evidence does, indeed, present close questions, both as to the time of the collision and the condition of visibility prevailing at that time and immediately before it occurred. This is due, in part, to the absence of any living eye-witnesses, except the defendant. The

testimony of all other witnesses, there being approximately eight in number, comes, in the main, from neighbors of decedent living reasonably close to the scene of the accident and who quickly gathered on hearing the crash or who drove up to the point of collision shortly afterward. No witness undertook to give the exact hour or minute of the accident but by testing their estimates against testimony of other and substantially contemporaneous events which were established with a greater degree of certainty, the jury might well have inferred that it happened close to, but shortly before, 6:13, p. m. Although there is not an accord between them, either as to the time or condition of visibility, there is, nevertheless, sufficient substantial evidence to have warranted submitting these issues to the jury for its determination, as the court properly did.

Certainly, the lower court, in the state of the record, could not say from the facts that reasonable men could draw but one inference therefrom and that inference unerringly pointed to the negligence of the plaintiff as the contributing cause of his injury. *Martin v. Harrison,* supra.

■ Defendant for his second assignment of error urges that the court erred in permitting evidence of two witnesses who testified that on the day following the accident, at 6:15, p. m., that is, thirty minutes after sunset on that day, they conducted an experiment to determine the degree of visibility prevailing at the time and place of the collision between the Buick and the Loibl tractor.

This line of testimony came from Christensen and Potter, who, in cooperation with one Cramer, conducted the test. Their testimony was in substantial accord as to all details of the experiment made.

When witness Christensen was asked the following question: "Do you have any recollection as to the degree of visibility, or what you could observe from where you were, at 6:15"? counsel for appellant made an objection as follows: "* * * There is no evidentiary value to this. Testimony of this kind would only be confusing. This was the following day. The light may have been different. Clouds may have made a difference. There has been testimony that clouds make a difference, the nature of clouds makes a difference. Certainly this testimony is not competent."

The objection to Potter's testimony concerning the weather was of the same tenor though more tersely stated. The degree of visibility at the time of the accident was one of the cardinal issues in the case. Necessarily, the weather prevailing was a proper element to have been accounted for in any experiment made.

Evidence as to weather at the time was an element to be taken into account in any determination whether the experiment had been made under substantially the same conditions as prevailed at the time of the original occurrence. Without knowledge of the weather conditions when Potter and Christensen made their test of visibility, what else they did would have rendered the experiment incomplete and incompetent. *Tuite v. Union Pacific Stages,* 204 Or 565, 591, 284 P2d 333; *Hall v. Brown,* 102 Or 389, 395, 202 P 719; *Leonard v. Southern Pacific Co.,* 21 Or 555, 565, 28 P 887, 15 LRA 221.

The testimony of both of these witnesses as to the weather conditions at the time of their experiment was substantially like that given by prior witnesses concerning the weather existing at the same time the night before and was, therefore, competent. 2 Wigmore on Evidence (3rd ed) 483 § 460.

■ A large discretion is vested in the trial judge in admitting evidence of experiments, and there is also a reluctance on the part of appellate courts to interfere with the lower court's judgment unless an abuse of discretion is made clearly to appear. *Hammons v. Schrunk*, 209 Or 127, 137, 305 P2d 405; *Tuite v. Union Pacific Stages,* supra; *Hall v. Brown,* supra; *Leonard v. Southern Pacific Co.,* supra.

■ The measure of permissible variation of the conditions of the experiment from those of the occurrence is measured by whether such variation is liable to confuse or mislead the jury. *Tuite v. Union Pacific Stages,* supra, at p 590; 20 Am Jur 630, Evidence § 756.

All of the specifications and conditions prevailing at the time of the experiment were, in our opinion, substantially the same as those existent at the time of the original occurrence and could not have produced a result confusing or misleading to the jury.

We find no merit in appellant's second assignment of error.

Defendant's third assignment of error relates to the court's failure to give three requested instructions and a certain instruction given over defendant's exception.

His brief states that they are grouped in this manner because they raise essentially the same legal questions. This is a conclusion with which we agree.

His argument under this assignment partakes much of his original thesis advanced in reference to the court's denial of his motion for a directed verdict, namely, that the plaintiff was negligent per se in failing to have certain lighting equipment on his tractor; that the evidence is conclusive that the accident occurred after 6:13, p. m.; and that the tractor was not visible to a motorist to the rear for a distance of 500 feet and, therefore, the absence of the equip-

ment and its proper lighting were the proximate cause of Loibl's death, for which he was contributorily negligent. We have already disposed of these matters by our holding on defendant's first assignment of error.

Summarizing the substance of the three requested instructions: they would direct the jury to find that Loibl was negligent per se if his tractor was not equipped with the equipment stipulated by the statutes. All of them carry additional statements that the evidence discloses that the tractor was not so equipped and implying that decedent was negligent in not illuminating them, thus taking from the jury the question of whether or not the accident occurred after 6:13, p. m., or conditions of invisibility prevailed.

■ The trial court clearly and sufficiently instructed the jury that a failure to have the tractor equipped as required by the motor code would constitute negligence as a matter of law. This, we think, was a correct statement. *Hickerson v. Jossey,* 131 Or 612, 618, 282 P 768; *Ross v. Willamette Valley Transfer Co.,* 119 Or 395, 397, 248 P 1088. This, when considered by the jury in connection with the following instruction to which the appellant objected, was sufficient to warrant the court's refusal to give the three requested instructions to which his third assignment makes reference.

The instruction to which defendant took exception was:

"If you find that at the time and place of this accident the law did not require the deceased to display these illuminating devices, then there would be no negligence in this particular on the part of the deceased and this question would have no further bearing on the case."

Under this instruction the court left to the jury the question of whether the accident occurred after or

before 6:13, p. m., and if before that time, whether decedent's vehicle was clearly discernible at a distance 500 feet ahead (ORS 483.402, supra). If the time element and degree of visibility established by that section were found favorable to plaintiff, then, obviously, he did not breach ORS 483.402, supra, and was not negligent as a matter of law in failing to illuminate his vehicle when there was no need therefor.

We find no merit in the fourth assignment of error.

■ We now turn to appellant's last assignment of error which is directed against the following instruction given by the court:

"* * * If you find from the evidence that the defendant Niemi, in the exercise of ordinary care, should have observed the existence of the tractor on the highway in time so that in the exercise of reasonable care he could have passed around it in safety, then it cannot be said that the failure to have the tail light and reflectors had any causal relation with the accident and death which resulted, and if you so find, the lack of these devices would not be contributory negligence and would not prevent the recovery of damages."

It is appellant's contention that by giving this instruction the court injected into the case the doctrine of "the last clear chance," a theory repudiated by both appellant and respondent. We do not think that it had the result claimed by defendant.

The instruction was given at plaintiff's request and has its genesis in *Ellenberger v. Fremont Land Co.,* 165 Or 375, 385, 107 P2d 837, and *Landis v. Wick,* 154 Or 199, 230, 57 P2d 759, 59 P2d 403, both cited by appellant as controlling.

In *Landis v. Wick,* supra, this court, at p 230, cites

and summarizes the holdings of our previous decisions on that doctrine as follows:

"* * * It is evident from these decisions that any plaintiff who desires to rely upon the last clear chance doctrine must present a situation wherein (1) his own negligence brought him into a place of peril; and (2) his own unwarranted conduct would be the proximate cause of his injury but for the fact that the doctrine, in relieving from the hardships of the contributory negligence rule, construes his negligence as remote and the failure of the defendant to embrace the clear chance of avoiding the collision as proximate. But, as will be observed from the decisions above reviewed, it may be that although the plaintiff was negligent he was not contributing to his own injury. In that event he ought not to be required to admit a fiction and depend upon another fiction to bring him a recovery. He ought to have a right to a judicial investigation of the question whether his negligence was a contributing cause of his injury. * * *"

Appellant argues from a false premise in asserting that: *"There is no independent testimony* in this record of any other substitute *natural* or artificial light which would have made the decedent's vehicle clearly visible to the appellant in time to have avoided the accident."* (Emphasis ours.) Such a conclusion, as to the record here, is disposed of by our holding on appellant's first assignment of error. His error is further exemplified by the very nature of the experiment challenged by his second assignment of error. The results of that experiment, if believed by the jury, are contrary to the representations as to the conclusive character of the facts as made by the defendant.

In *Landis v. Wick,* supra, at p 217, the court observed: "The record contains positive testimony that those who looked in the direction of the bicycle saw it

clearly," notwithstanding that the bicycle failed to have the statutorily required rear red reflector. Likewise, in *Ellenberger v. Fremont Land Co.*, supra, there was testimony that a parked truck not completely equipped with all the lighting appliances required by law was sufficiently visible to those approaching from the rear to see it, thus enabling such persons to drive around and avoid striking the standing vehicle. (165 Or at p 386) Also see the more recent case of *Leap v. Royce*, 203 Or 566, 279 P2d 887, where, at p 576, after reviewing the Landis and Ellenberger cases, supra, in substantially the same terms as above, the court says: "If his presence [the plaintiff Leap] was in fact known, or should have been known under all of the circumstances existing, it then became immaterial as a causation factor whether or not the specific statutory requirements were complied with."

We think the instruction given was an admirable exposition of the law pertinent to the phase of the case to which it was addressed and is not susceptible to a criticism of having introduced the doctrine of last clear chance.

Affirmed.

PERRY, C. J., concurs in the result.