Currie, J.
 

 Certain issues originally raised in the appellant’s brief have been rendered moot by our decision in
 
 Schultz v. Vick
 
 (1960), 10 Wis. (2d) 171, 102 N. W. (2d) 272. Because of this, counsel for the appellant limited his oral argument to the single issue of whether the plaintiff’s causal negligence was not as a matter of law equal to, or greater than, the causal negligence of Miss Anderson, appellant’s insured. This opinion also will be addressed to only that issue.
 

 The accident happened at about 3 o’clock in the afternoon of June 15, 1956, on State Trunk Highway 54 about 10 miles southwest of the city of Stevens Point. The sun was shining and the pavement was dry. This highway runs in a general easterly and westerly direction and at the point, in question there is a right-angle intersection. The road which approaches from the south is a county trunk highway while the one leading north is a town road. There
 
 *172
 
 is a jog in this intersection inasmuch as the center line of the town road lies approximately 50 feet east of the center line of the county trunk highway. Highway 54 is paved with concrete, the pavement being 20 feet in width and there are wide, gravel shoulders on either side. There are no marked crosswalks at this intersection for use by pedestrians. Highway 54 at this point is fairly level for some distance on either side of this intersection. Visibility along it to the west is good for half a mile, but approximately 400 to 500 feet east of the intersection Highway 54 curves slightly to the southeast.
 

 The plaintiff was a farmer sixty years of age living in the vicinity of the intersection. He testified that prior to the accident he was walking north along the west side of the county trunk highway and, as he came to the intersection, he stopped on the south shoulder a foot or two south of the south edge of the concrete pavement. He saw a vehicle approaching from the west which he termed a truck but which other witnesses stated was a car. He waited until it had passed and then saw another vehicle approaching from the east. This he also testified was a truck. After this second vehicle passed by, he claims that he waited a minute and then started to walk north across the pavement.
 

 The plaintiff further testified that he looked to the east before starting to cross the pavement and did not see anything coming. He was walking and not running when he started across. He first testified that he did not remember anything from then until he was hit, but thought he remembered crossing the center line of the highway. However, upon cross-examination he was asked these questions and gave these answers thereto:
 

 “Q.
 
 During the time that you were walking from the south shoulder to the center line of Highway 54 did you look again to the east toward Plover?
 
 A.
 
 No, I don't remember that I did, No, sir. . . .
 

 
 *173
 

 "Q.
 
 You never, at any time, saw Miss Anderson’s car?
 
 A.
 
 I did after I came to.
 

 “Q.
 
 But I mean before it struck you, I should have said, Mr. Winkler, you never saw Miss Anderson’s car?
 
 A.
 
 No, sir.”
 

 He could not recall any of the details as to' how he was struck, but the first thing he remembers thereafter was that he was lying on the north shoulder and exclaimed, “My leg is broke.” His leg was badly fractured.
 

 Miss Anderson, at the time of the accident, was twenty-three years of age and an elementary-school teacher. On the day in question she was driving a 1947 Nash coupe from Appleton to Wisconsin Rapids where her mother resides. As she approached the intersection she met a car coming from the west which she passed to the east of the curve. She testified that another car was following her proceeding westerly, which car passed her at a great speed after the car coming from the west had passed. These other vehicles undoubtedly are those which the plaintiff referred to as trucks.
 

 Miss Anderson further testified that she did not see the plaintiff standing at the edge of the pavement prior to his attempt to cross Highway 54. When she first saw the plaintiff she stated he was running across the highway and was already north of the center line. She was driving at a speed of 45 to 50 miles per hour and immediately applied her brakes and attempted to swerve to the left or south to avoid striking him. The extreme right edge of the right front fender struck the plaintiff. It was her version of the accident that her fender struck the leg of the plaintiff while it was raised in the act of running.
 

 Two other eyewitnesses substantiated the plaintiffs story that he was walking and not running as he started across the highway. The objects he was carrying in his pockets, such as his pipe, a pair of pliers, some wrenches, and loose
 
 *174
 
 change, were found on approximately the north four feet of pavement and the north shoulder of the highway. The force of the impact had also thrown the plaintiff onto this shoulder just to the north of the pavement.
 

 A county traffic officer arrived at the scene of the accident shortly after it occurred. He found one tire skid mark 24 feet long extending easterly from the apparent point of impact. This mark was north of the center line but slanted slightly to the south. At a point nine to 12 feet west of the west end of such skid mark a set of double tire marks began and extended to the rear of Miss Anderson’s car parked on the north shoulder. The east end of the southerly one of such double marks commenced south of the center line but then swerved to the north. Apparently such double set of marks was made after the impact had occurred. The 24-foot length of the single skid mark extending easterly from the point of impact indicates that the point at which Miss Anderson first saw the plaintiff was such 24 feet plus the distance traveled during her reaction time in applying her brakes.
 

 The plaintiff possessed very poor vision. He testified that back as far as he could remember the only vision he possessed in his left eye was to be able to distinguish between darkness and light. About thirty years prior to the accident he had undergone an operation for removal of a cataract from his right eye. In 1954 the plaintiff was party to another traffic accident. The county traffic officer who investigated such accident testified that he told the plaintiff to go and sit in the officer’s squad car parked approximately 100 feet distant. The plaintiff replied that he could not see the squad car, which would indicate that he could not distinguish objects at that distance. His driver’s license had been taken away because of poor vision.
 

 The defendant puts great reliance upon our holding in the case of
 
 Nelsen v. Cairo
 
 (1955), 270 Wis. 312, 314, 70
 
 *175
 
 N. W. (2d) 665, which involved the striking of a pedestrian by an automobile, and particularly upon the following concluding paragraph thereof that stated:
 

 “Elere the negligence of plaintiff and defendant as to lookout is precisely the same kind and character. In addition, plaintiff was also negligent in failing to yield the right of way, whereas defendant’s negligence is limited to that of lookout. Under these circumstances it must be held that the negligence of the plaintiff is equal to or greater than that of the defendant, and the trial court properly granted the motion for a directed verdict.”
 

 tlowever, the afore-quoted statement is not to be interpreted as meaning that negligent lookout on the part of the pedestrian and the driver are always equal and precludes finding of the driver more negligent than the pedestrian. A reading of the opinion in the
 
 Nelsen Case
 
 discloses that the particular type of failure of lookout was of the same degree and character. This court in recent years has declared many times that the jury in comparing negligence is not required to attribute the same percentage of negligence to the two participants of a motor vehicle accident merely because they are each guilty of the same category of negligence.
 
 Evjen v. Packer City Transit Line
 
 (1960), 9 Wis. (2d) 153, 163, 100 N. W. (2d) 580, and
 
 Taylor v. Western Casualty & Surety Co.
 
 (1955), 270 Wis. 408, 411, 71 N. W. (2d) 363. In other words, the jury is not required to equate the negligent lookout of one participant with the negligent lookout of the other.
 

 When a jury is asked to compare the negligence of two participants to a motor vehicle accident, in answering the comparative-negligence question of a special verdict, the task confronting it is to fix the percentages of negligence attributable to each participant in proportion to how much the fault of each contributed to cause the accident.
 

 
 *176
 
 Inasmuch as the plaintiff secured a verdict in his favor below, the evidence must be viewed most favorably to him in passing on the issue of whether the jury’s answer to the comparative-negligence question is sustained by credible evidence. Henthorn v. M. G. C. Corp. (1957), 1 Wis. (2d) 180, 184, 83 N. W. (2d) 759. Following this rule, the jury had the right to accept as true the plaintiff’s testimony that he actually remembered no details of the accident from the time he stepped onto the pavement until he was hit and found himself lying on the north shoulder with a badly fractured leg. This is so even though he gave testimony on cross-examination which conflicted therewith. The jury also was entitled to conclude that the plaintiff was walking when he first started to cross the pavement, but was running after he crossed the center line. A reasonable inference to be drawn from this change of pace is that the plaintiff had caught sight of the approaching Anderson car and was hurrying to get out of its path at the time Miss Anderson first caught sight of him. Inasmuch as he was already running when Miss Anderson first saw him, the jury could reasonably infer that he must have seen the Anderson car before she saw him. This would afford sufficient basis for the jury’s determining that Miss Anderson’s fault in not seeing the plaintiff was a greater factor in contributing to the accident than was the plaintiff’s negligence.
 

 We concede that the issue of whether the plaintiff’s negligent lookout, together with his failure to yield the right of way, was not equal to, or greater, than the negligence of Miss Anderson is very close. However, a majority of the court have concluded that the jury’s apportionment of negligence can be sustained upon the basis above set forth.
 

 By the Court.
 
 — Judgment affirmed.