Frank SAETZ, Annie Saetz and Frank Saetz, Jr., Respondents,

v.

Ernest BRAUN, Appellant.

No. 7964.

Supreme Court of North Dakota.

Aug. 17, 1962.

Greenwood & Swanson, Dickinson, for appellant.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for respondents.

BURKE, Judge.

In their complaint in this action plaintiffs alleged that the defendant was engaged in the business of transporting livestock by motor vehicle; that they entered into a contract with the defendant, by the terms of which, defendant, for a consideration, agreed to transport certain livestock from the home pasture of the plaintiffs to another pasture which plaintiffs had leased; that in the course of such transportation, due to the negligence of the defendant, a number of the livestock were killed and that plaintiffs' damages, proximately caused by defendant's negligence were $2,725.00.

In his answer, defendant admitted that he was the owner of motor vehicle equipment suitable for the transporting of livestock. He alleged that he was hired by plaintiff, Frank Saetz, to assist in moving certain livestock from one pasture to another; that at all times the plaintiff, Frank Saetz, was in charge of the operation, using his own truck in conjunction with the equipment of the defendant, and that at all times defendant was under the direction and control of the plaintiff, Frank Saetz. For a counterclaim defendant alleged that plaintiff, Frank Saetz, negligently selected and directed him to use an unsafe route to travel in transporting the cattle, and that by reason of such negligence defendant incurred damages in the total sum of $2,400.-00. The case was tried to a court without a jury and judgment was rendered in favor of the plaintiffs for the sum of $2,193.60. The defendant has appealed from the judgment and has demanded a trial anew in this court.

Since the issues here are largely ones of fact it will be necessary to consider the evidence in some detail.

Defendant had been in the business of transporting livestock by motor vehicle for a period of about two years. He had an agricultural carrier permit from the Public Service Commission and was equipped with a tractor and a forty foot cattle trailer. Plaintiffs lived and farmed northwest of Dickinson. They owned about 90 head of mature cattle and some calves which they wished to move from a pasture near the home farm to a pasture 10 miles southwest of Richardton or a distance of approximately 40 miles. Frank Saetz first called the defendant by phone to learn if he would be available to move the cattle. Later the two met in Dickinson and an oral agreement was made. Defendant agreed to transport the mature cattle from one pasture to the other for $30.00 a load. It was contemplated that there would be three loads. It was understood that plaintiffs would help with the loading and the unloading of the cattle and that they would transport the young calves in their farm truck. On the day the cattle were to be moved, defendant arrived at plaintiffs' farm at about eight a. m. There with the help of all concerned the trailer was loaded with 30 cattle which averaged about 1,000 lbs. in weight. The farm truck was loaded with calves. Plaintiff, Frank Saetz, described to the defendant the route to be taken and the parties set out with the defendant leading the way driving his semi-trailer unit. They stopped at Dickinson and from there on plaintiff, Frank Saetz, led the way. They proceeded eastward on Highway #10 to its junction with Highway #8, thence south on Highway #8 to the Heart River. After crossing the Heart River Bridge the parties stopped and conferred. According to plaintiffs, Frank Saetz and Frank Saetz, Jr., the subject of the discussion was the route to be taken from the place where they stopped to the pasture. In order to follow the shortest route from that place it was necessary to cross a farm bridge. Frank Saetz, Sr. asked the defendant to leave his truck parked at the side of the road and come with him to inspect the bridge to determine if it was sufficiently strong to support the weight of defendant's truck and load which totaled 60,000 lbs. This defendant refused

to do, saying, "As long as I am this far I might as well travel all the way to the farmer's bridge. Defendant followed plaintiffs' truck to the bridge where the two vehicles stopped. There the parties inspected the bridge and defendant stated, "It has steel stringers, steel never cracks, it will bend but it never cracks." Frank Saetz, Sr., however, told defendant not to cross the bridge. When defendant still insisted he could cross the bridge, Frank Saetz, Sr. told him, " * * * pull on the side. * * * we would go unload the calves, then we gonna take some of those cows, that's too big a load for that." Frank Saetz, Sr. and his son then drove the truck to the pasture and unloaded the calves. They returned to the bridge where defendant had waited for them. They unloaded two truck loads or 14 cows from the trailer and drove them to the pasture. While they were transferring cows from the trailer to the truck, a Mr. Schmidt who farmed in the vicinity drove up and operations were suspended while the parties discussed the strength of the bridge with Schmidt and Schmidt said, "The load is too heavy." He also stated, "It's just made for light farm traffic. * * * two ton plain farm trucks, that's all." In any event the tractor-trailer with the lightened load crossed the bridge safely and delivered the remaining cattle to the pasture.

Much of the foregoing testimony is contradicted by the defendant. He denied that Frank Saetz, Sr. asked him to leave his outfit on the highway, while they inspected the bridge. He denied that Frank Saetz asked him not to cross the bridge or that he suggested lightening the load before crossing. He stated that the only reason for unloading the cows at the bridge was that two cows were down in the center of the trailer and that it was necessary to remove 14 cows in order to reach the two that were down. He denied that Schmidt told him that the bridge was safe for light loads only and stated Schmidt told him that a semi had crossed with horses and that they hauled 225 bushels of wheat across it in one load which would weigh 18,000 lbs. per axle.

The bridge was 30 feet long and 16 feet wide. Its main supports were two built up steel beams, set six feet apart in the center of the bridge and two wooden supports each made of two 2 inch by 12 inch planks set at the outside edges of the bridge. On the east abutment of the bridge these supports rested on four 8 inch by 8 inch pilings. On the west abutment the outside supports were 6 inches by 6 inches and the supports for the steel beams were a 7 inch post and a 5 inch by 10 inch timber. The flooring of the bridge consisted of planking set perpendicularly to the supporting beams. On top of the cross planks in the center of the bridge were two sets of planks which ran lengthwise of the bridge. These were placed to indicate a track for driving across the bridge. The steel beams of the bridge each were made up of two channel irons fastened together on one side with a quarter inch steel plate and on the other side by a narrow quarter inch steel lacing. The lower channel on the north side of the bridge had an old break in it approximately halfway across the beam. This break was not discovered by the parties in the cursory inspection they made of the bridge.

On the second trip from plaintiffs' ranch to the new pasture, the parties followed an alternate route which avoided the bridge. Defendant testified that he asked plaintiffs to show him another approach to the pasture and that the alternate route was taken at his suggestion. This route was somewhat longer. Defendant testified that the road was too soft, that he had to go in first gear most of the way; that along the route was a steep hill that was difficult to negotiate, that going down the hill in first gear and with the brakes set the truck started to slip and that he was afraid he would tear out the rear end and tip over. This trip, however, was uneventful. It was completed without any of the cattle falling and they were delivered to the pasture in good shape.

All parties agree that defendant refused to take this alternate route on the third trip and decided "to go straight through across the bridge." Frank Saetz, Sr. was asked if he protested against going across the bridge on the third trip and he answered "I didn't say nothing, he's the driver." Another time he stated that he told defendant earlier in the day and that he showed him the way to go around.

On the third trip, plaintiffs, Frank Saetz, Sr. and Frank Saetz, Jr., again led the way. They followed the route across the bridge. Defendant followed them and attempted to cross the bridge with a full load. The beams on the north side of the bridge broke and the trailer slid off the bridge on that side and tipped over on its side. Because the front end of the trailer was considerably higher than the rear end, all of the cattle were piled up in the rear of the trailer. Evidence as to the number of cattle killed or injured and the damages suffered by the plaintiffs is undisputed. There was evidence of tire tracks from which it could be inferred that defendant turned sharply to go upon the bridge and that the rear wheel assembly of the trailer entered upon the bridge on the north side so that the wheels were astride the beam on that side thus placing the entire load on the rear wheels upon a single beam of the bridge.

Upon this record plaintiffs contend that defendant was negligent in attempting to cross a bridge which he knew or ought to have known was unsafe and in driving onto the bridge in such a manner that the entire weight of the rear end of defendant's vehicle was on one side of the bridge. They also contend that defendant was liable for the damages proximately caused by his negligence under the provisions of Section 8–03–02 NDCC. This section reads:

"A carrier of property for reward must use at least ordinary care and diligence in the performance of all his duties. * * *"

On the other hand the defendant contended that it was plaintiffs' duty to select a safe route for the transportation of the cattle; that they failed in this duty by showing the defendant two unsafe routes, that when defendant elected to take the bridge route on the third trip, plaintiffs were negligent in failing to exercise their prerogative of requiring defendant to unload part of the cattle before crossing as had been done on the first trip and having failed to protest on the third trip or to require part of the cattle to be unloaded before crossing, plaintiffs were negligent and assumed all of the risks involved.

The trial judge found that defendant was negligent in selecting the bridge route for the third trip, after he had been warned by both Frank Saetz, Sr. and the witness, Schmidt, that the bridge would not carry his fully loaded trailer; that defendant was also negligent in driving upon the bridge in a manner which placed all of the weight of the rear of the trailer on the north beam of the bridge and that such negligence was the proximate cause of plaintiffs' damages.

From our consideration of the evidence we are satisfied that defendant, on the first trip, was warned not to cross the bridge with a full load by both Frank Saetz, Sr. and by the witness, Schmidt, and that the witness, Schmidt, told him that the bridge was only safe for light loads. We are also satisfied that Frank Saetz, Sr. insisted on removing about half the load from the trailer on the first crossing because he thought it was unsafe for defendant to cross the bridge with a full load and that he advised defendant to that effect. The testimony of defendant that the only reason, for removing the 14 cows from the trailer and transporting them to the pasture in two loads in plaintiffs' truck, was because two cows were down in the center of the trailer, is hardly credible in view of the fact that the bridge was only half a mile from the pasture. We are also satisfied that the decision to drive straight through across the

bridge on the third trip was the defendant's decision. In fact, he admitted that it was.

■■ It was defendant's duty to exercise at least ordinary care. Section 8-03-02 NDCC, supra. Ordinary care means such care as persons of ordinary prudence usually exercise about their own affairs of ordinary importance. Section 1-01-15 NDCC. The standard by which the conduct of the defendant is to be judged in determining whether he was negligent is the conduct of an ordinarily prudent person under like or similar circumstances, conditions or surroundings. McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771.

■ The parties to this suit were unquestionably confronted with a problem, as both of the known routes into plaintiffs' new pasture presented difficulties. The route across the bridge was hazardous and known by the parties to be so. The route which avoided the bridge was considerably longer. In places it was just a trail. In some places the trail was soft and defendant had to drive in low gear a large part of the time. Toward the end of the route there was a steep hill which it was necessary to descend. It may be that defendant exaggerated the difficulties of this route because Frank Saetz, Sr. who rode with him on the second trip stated they traversed the route without difficulty and that the hill was no more difficult to descend than the hill leading to the bridge. He also stated that after the bridge was down the alternate route was used to move cattle out of the pasture both by truck and semi-trailer without incident. It is undisputed, however, that defendant told Frank Saetz, Sr. that on the third trip he was going to drive straight through on the bridge route because he didn't want to tear the rear end out of his truck on the alternate route. In making this election it appears to us that the defendant, in order to avoid possible damage to his equipment, chose to risk a greater hazard, which on the basis of his information, should have been considered probable rather than merely possible. What influenced him to make this decision we do not know. It may be that he thought that Frank Saetz, Sr. and the witness, Schmidt, were mistaken in their estimates of the strength of the bridge, or it may be that he was lulled into a false sense of security by the fact that he had crossed the bridge safely three times on that day, once on the way into the pasture with half a load and twice on the way out of the pasture without any load. Whatever his reason may have been we are satisfied that his acts do not measure up to the standard of what a reasonably prudent man would have done in the circumstances and that he was therefore negligent. We are also of the opinion that reasonable prudence would require the defendant to exercise great care in driving onto the bridge. He had been warned that it was weak. He had personally inspected it and knew that its main supports consisted of two beams set six feet apart in the middle of the bridge. If he was to go on the bridge at all, he should have made his turn onto the bridge in such a manner that the rear wheel assembly on the trailer would enter at the center of the bridge so that the weight of the load would have been equally distributed over the supporting beams. His failure to do so exhibited a lack of care and skill that ordinarily should be expected of a carrier for hire and this also constituted negligence on his part. Whether the bridge would have collapsed, had defendant driven carefully can never be known, his two negligent acts, however, combined as the proximate cause of plaintiffs' damages.

■ We cannot agree with defendant's contention that the failure of plaintiff Frank Saetz, Sr. to protest the use of the bridge on the third trip constituted contributory negligence or assumption of risk. He had previously warned defendant, he had insisted on removing about half of the load before crossing the bridge on the first trip, and he had shown defendant an alternate route. Defendant was in control of the driving of his own vehicle and he knew, when he determined "to drive straight through" across the bridge on the third

trip, he was acting contrary to this plaintiff's wishes and judgment. Frank Saetz stated that the reason he didn't protest on the third trip was because he had already told defendant and defendant was the driver.

We are in accord with the decision of the district court and the judgment in this case is therefore affirmed.

SATHRE, C. J., and MORRIS, STRUTZ and TEIGEN, JJ., concur.