Argued May 7, affirmed December 31, 1973, petition for
rehearing denied January 22, 1974

# CUTSFORTH, *Appellant, v.*
# KINZUA CORPORATION, *Respondent.*

517 P2d 640

*Robert G. Hawkins,* Gresham, and *Thomas Cavanaugh,* Portland, argued the cause for appellant. With them on the briefs were Hawkins, Germundson & Scalf, Gresham, and Schouboe & Cavanaugh, P. C., Portland.

*George H. Corey* and *Steven H. Corey,* Pendleton, argued the cause for respondent. With them on the brief were Corey, Byler & Rew, Pendleton.

BRYSON, J.

This is an action for wrongful death arising out of a collision between the plaintiff's decedent's automobile and defendant's log loader. Defendant filed a counterclaim for damages to its log loader. Oregon's comparative negligence statute, ORS 18.470, was in effect at the time of the accident. The jury, by "SPECIAL FINDINGS OF FACT" (ORS 17.415), found that plaintiff's decedent was 56 percent negligent and defendant was 44 percent negligent. The trial court entered judgment that plaintiff "recover nothing under the complaint" and that defendant "recover nothing on

its counterclaim * * *." Plaintiff appeals and defendant cross-appeals.

The accident occurred at approximately 11:30 p.m. on September 10, 1971, on Highway 74 near Heppner, Oregon. Defendant operated a lumber mill on property which was bisected from north to south by Highway 74. Felix Schwarzin, defendant's employee, had been operating the log loader in a yard in the southwest portion of the mill. As Schwarzin was driving the machine north on Highway 74 to a storage garage located across the highway, the decedent's vehicle ran into the rear end of the log loader in the east lane of traffic.

The log loader was a 25-ton, four-wheeled vehicle equipped with four flood-type headlights directed forward and two flood-type headlights and two red taillights directed to the rear.

Schwarzin testified that at the time of the accident all of the log loader's lights were illuminated and his speed was between ten and twelve miles per hour. The log loader was not equipped with a rearview mirror or a slow-moving vehicle emblem.

Prior to the accident, plaintiff's decedent was observed having drinks in two cocktail lounges. The decedent left the Wagon Wheel Lounge in Heppner at approximately 11:30 p.m. and headed north on Highway 74. Several minutes later decedent's vehicle struck the rear end of defendant's log loader at a speed estimated to be between 65 and 85 miles per hour, leaving no skid marks. An analysis of the decedent's blood established the alcohol content at .17 percent. The designated speed was 55 miles per hour.

428

In the original complaint, plaintiff alleged that defendant was negligent "[i]n operating said vehicle [log loader] on a public highway when there was available for defendant's use a private road immediately adjacent to said public highway; * * *." This allegation referred primarily to a private dirt road maintained by defendant along the east side of Highway 74. On defendant's pretrial motion, the presiding court struck this allegation from the complaint and the trial court refused to reinstate the allegation at trial or permit plaintiff to adequately introduce proof on the subject of the alternate route. These rulings form the basis of plaintiff's first two assignments of error.

The decision to strike certain allegations from a pleading rests within the sound discretion of the trial court, and this court will not reverse that decision unless an abuse of discretion is shown. *McGinnis et al v. Keen,* 189 Or 445, 449, 221 P2d 907, 909 (1950). Plaintiff failed to plead facts sufficient to show that defendant owed plaintiff's decedent any duty to use an alternate route. The bare statement that defendant was negligent in failing to use another road will not suffice. This court stated in *Klerk v. Tektronix, Inc.,* 244 Or 10, 13, 415 P2d 510, 512 (1966):

> "It is well established that actionable negligence arises only from the breach of a duty owed by one person to another, and that to state a cause of action for negligence the complaint must state the duty imposed or facts from which the law will imply a duty. * * *"

The trial court was clearly within its discretion in striking this allegation and refusing to reinstate it at trial. Since the subject of alternate routes was outside the scope of the pleadings, evidence concerning that

subject was properly excluded. ORS 41.230. *See Gabel v. Armstrong,* 88 Or 84, 171 P 190 (1918), where this court held that evidence offered to prove allegations which had been excluded from the case was properly refused.

■ The plaintiff also argues that "[f]urther evidence regarding alternate routes was kept from the jury and plaintiff was admonished not to argue the failure to use alternative routes even though evidence came in during trial, without objections, as to alternative routes" and that "the use of the highway by defendant's vehicle when there were alternative routes available and known to defendant and there was no emergency requiring defendant to use the public highway then defendant would be negligent when it took the highway route in preference to the alternate routes * * *."

> "Consideration must also be given to any alternative course open to the actor. Whether it is reasonable to travel a dangerous road may depend upon the disadvantages of another route; and while mere inconvenience or cost may not in themselves be sufficient to justify proceeding in the face of great danger, they may justify taking other risks which are not too extreme * * *.
>
> "The alternative dangers to the actor himself and to others must be thrown into the scale, and a balance struck in which all of these elements are weighed." W. Prosser, Law of Torts 148-49, § 31 (4th ed 1971).

Plaintiff made an offer of proof but it consisted solely of a number of other automobiles being detoured around the scene of the accident on the alternate route. This would prove that automobiles could use the alternate route, but there is nothing in the proof to show that such route was available to a vehicle with the weight

of the log loader or that he proceeded on the highway "in the face of great danger."

Plaintiff makes no contention in his pleadings that defendant's log loader was unlawfully on the highway. Plaintiff seems to argue in light of the loader's size and slow speed and the type of equipment or lights on the vehicle that it should "be considered negligence to place this vehicle on the highway at 11:20 p.m. when no emergency existed and there was no good reason for the vehicle to be on the highway at that time of night or at any other time." If it had been daylight, rather than darkness, it is difficult to understand how the operation of the loader on Highway 74, rather than on some alternate route, could constitute negligence. Plaintiff's decedent had a clear view on straight roadway for one quarter of a mile. With Oregon's economy consisting primarily of lumber and agriculture, we accept logging trucks, heavy equipment, and tractor-trailers as part of highway traffic, and the reasonable, prudent man accepts and guards against it although he may not find it to his liking. It is part of the uniform standard of behavior by the hypothetical reasonable, prudent man. If one was to drive a pickup truck over-loaded with firewood at a slow speed on the highway rather than on an available alternate route, would such an act support an allegation of negligence grounded on failure to use an alternate route? We think not. If no alternate route was available we would consider the overloading, control, and speed of the vehicle as elements of negligence to be submitted to the jury. In the present case the plaintiff alleged that the defendant was negligent:

"1. In operating said log loader at night with two white lights illuminated facing the rear * * *.

"2. In operating said vehicle during the hours of darkness without displaying red illuminated lights on the rear of said vehicle.

"3. In operating said vehicle on a public highway at an unreasonably slow speed without warning plaintiff's decedent of said vehicle's slow speed.

"4. In operating said vehicle on a public highway when in the exercise of reasonable care, defendant knew or should have known said vehicle was in an unsafe condition so as to endanger other persons using said highway, * * *.

"* * * * * *.";

and in failing to maintain proper lookout and control. The court submitted these allegations of negligence with all the evidence to the jury for its consideration.

We find the court did not err as contended by plaintiff's first two assignments of error.

During trial, plaintiff elicited testimony from Felix Schwarzin, the driver of the log loader, which indicated that the vehicle had no rearview mirror and that defendant had never instructed Schwarzin on how to turn off the loader's rear headlights. After both parties had rested, plaintiff moved to amend its complaint to add these facts as specifications of negligence. The court denied the motions and the rulings are assigned as error by plaintiff.

■ A trial court is authorized by ORS 16.390 to permit parties to amend their pleadings to conform to the facts proved at trial, but the decision to permit such amendments is within the court's sound discretion. This court will not disturb the trial court's decision unless it clearly appears that the discretion was abused to the prejudice of one of the parties. *Sackett v. Mitchell,*

264 Or 396, 505 P2d 1136 (1973) ; *Morrill v. Rountree,* 242 Or 320, 408 P2d 932 (1966).

■ ORS 483.450 requires motorists to equip their vehicles with a rearview mirror. Defendant's failure to comply with this statute raised a rebuttable presumption of negligence. *See Freund v. DeBuse,* 264 Or 447, 506 P2d 491 (1973). However, proof of negligence, by presumption or otherwise, should not be confused with proof of causation.

> "* * * [T]he unexcused violation is negligence 'per se,' or in itself. The effect of such a rule is to stamp the defendant's conduct as negligence, with all of the effects of common law negligence, but with no greater effect. There will still remain open such questions as the causal relation between the violation and the harm to the plaintiff * * *." W. Prosser, Law of Torts 200-01 (4th ed).

The requirement of proof of causation is further explained in the following frequently quoted passage from Mr. Justice Cardozo's opinion in *Martin v. Herzog,* 228 NY 164, 170, 126 NE 814, 816 (1920) :

> "We must be on our guard, however, against confusing the question of negligence with that of the causal connection between the negligence and the injury. *A defendant who travels without lights is not to pay damages for his fault unless the absence of lights is the cause of the disaster.* A plaintiff who travels without them is not to forfeit the right to damages unless the absence of lights is at least a contributing cause of the disaster. To say that conduct is negligence is not to say that it is always contributory negligence. 'Proof of negligence in the air, so to speak, will not do' (Pollock Torts [10th ed.], p. 472). * * *" (Emphasis added) ; quoted with approval in *Landis v. Wick,* 154 Or 199, 209-10, 57 P2d 759, 763, 59 P2d 403 (1936).

We are unable to find any evidence that the lack of a rearview mirror on the log loader contributed in any degree to the accident. Had there been no violation of this statute, the accident would have occurred just as it did. *Cf. Henthorne v. Hopwood et al,* 218 Or 336, 348, 338 P2d 373, 345 P2d 249, 252 (1959).

The court could have allowed plaintiff's request to amend his pleadings to show defendant's negligence in failing to instruct Schwarzin on how to operate the light switch, but it raises a different question. This request came after both parties had rested. The court had excused the jury for the day and told them, "We will recess until tomorrow morning at 9:30 when the only matters at that time will be the respective statements of counsel to you, the Court's instructions as to the law applicable to this case, and then the matter will be submitted to you for your consideration."

Prior to trial plaintiff's counsel deposed Schwarzin, operator of the log loader. It is argued that Schwarzin's deposition[1] left plaintiff with a misleading impression that Schwarzin knew how to operate the light control switch and that he did not know until plaintiff called Schwarzin as a witness that no one had told Schwarzin how to turn off the back white lights and still leave the red taillights burning (in trial of the case plaintiff attempted to prove that the bright rear headlights on the loader had caused the accident).

■ This court has spoken on numerous occasions as to when amendments to pleadings should be allowed or denied. Generally, we say that the court has ample discretionary authority to allow amendments, *Watson*

---

[1] Unfortunately, Schwarzin's deposition is not a part of the record on appeal.

*v. Dodson,* 238 Or 621, 395 P2d 866 (1964), provided the proffered amendment does not substantially change the cause of action or interject an entire new element of damage. *Wood v. Southern Pacific Co.,* 216 Or 61, 72, 337 P2d 779 (1959); *Maerz v. The J-C Company, Inc.,* 223 Or 536, 539, 355 P2d 94 (1960). *Cf. Wells v. Washington County,* 243 Or 246, 249, 412 P2d 798 (1966).

■ One factor the court should consider in determining whether to permit an amendment after both parties have rested their cases is whether the movant knew or reasonably should have known earlier in the case of the need to amend his pleadings.

> "Where the party seeking the amendment has reasonable means of learning or has knowledge prior to trial of the circumstances which make it desirable for him to amend, a slight chance that the other party will be prejudiced will justify a refusal of the requested amendment. * * *" *Quirk v. Ross,* 257 Or 80, 83-84, 476 P2d 559, 561 (1970).

*See also, Boyer v. Dawson,* 216 Or 393, 395, 337 P2d 785, 786 (1959); *Hopfer v. Staudt,* 207 Or 487, 494-95, 298 P2d 186, 190 (1956).

■ Here the plaintiff could have deposed the operator, Schwarzin, more thoroughly and other defendant employees more knowledgeable in the operation of the lights of the log loader. Also, the log loader could have been visually inspected. The trial judge's statement at the time he denied the motion to amend the pleadings best describes the court's dilemma:

> "* * * We have had the completion of the case. I now recognize that Mr. Hawkins says that in the taking of the deposition from the witness he indicated the operation of the switch. There has been no indication whether or not plaintiff in any way

examined this equipment themselves or had anyone examine it for them or inspect it for them to check it out. And it does appear that to come in now, after all the evidence has been concluded, the Court has instructed the jury that all of the testimony has been presented which will be presented, the jury has been excused, it does place a burden upon defendant to not be able to answer something that was not in issue at any time in the pleadings * * *."

Under the circumstances of this case, we do not believe that the court erred in denying this motion to amend.

Plaintiff assigns as error the refusal of the court to give the following requested jury instruction:

"I instruct you that the operator of any vehicle has a continuing duty to maintain a slow moving vehicle emblem on his vehicle in conformity with ORS 483.457 if said vehicle is designed to operate at speeds less than 25 mph and he must exercise the highest degree of care in the discharge of this duty.

"If you find from all of the evidence, if any, that the defendant did not exercise the highest degree of care in installing and maintaining such an emblem, then you are justified in finding defendant was negligent in the operation of said vehicle. * * *"

10. The language of this instruction was taken from *Hyster Co. v. Willis-Shaw Frozen Exp.*, 261 Or 534, 594 P2d 710 (1972), where this court stated that a defendant could be excused from complying with certain vehicle safety equipment statutes only if it could not have done so by the exercise of the highest degree of care. The cited authorities for this principle, *Ainsworth v. Deutschman*, 251 Or 596, 446 P2d 187 (1968), and *McConnell v. Herron*, 240 Or 486, 402 P2d 726 (1965), were in this respect overruled in *Freund v. De-*

*Buse,* 264 Or 447, 451, 506 P2d 491, 493 (1973). Plaintiff's requested instruction was incorrect as a matter of law because it permitted the jury to find that defendant was excused from its statutory duty only if defendant proved that the violation occurred despite the exercise of a degree of care higher than that of a reasonable man. *Freund v. DeBuse, supra.* The trial court gave other more accurate instructions on the law and we are satisfied that this requested instruction was properly refused.

■ Another assignment of error complains of the court's refusal to grant plaintiff a directed verdict. From our review of the testimony, we find that there was substantial evidence from which the jury could have concluded that the excessive speed, inattention, and intoxication of plaintiff's decedent caused the accident. *See Scott v. Mercer Steel/Edwards Realty,* 263 Or 464, 503 P2d 1242 (1972) (trial court properly denied defendant's motion for directed verdict where jury could have found that the accident was the result of defendant's negligence).

Two assignments of error complain of the court's jury instructions based on ORS 483.992 (2) and 483.999 (1).

The court instructed the jury relating to intoxication, based on ORS 483.642 (1) (c) and 483.999 (1),[2] and that a violation of such law is negligence.

---

[2] ORS 483.642 (1) (c):

"(1) At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's

Plaintiff registered the following objection to the instructions (although not set forth in the brief pursuant to Rule 2.35, Appendix B, Illustration 5):

> "MR. HAWKINS: We also except to the Court's giving the instruction about .15 being a disputable presumption of negligence in that that statute is criminal in nature and it is only applicable when you take them in conjunction with the requirement set forth in 483.634 through 483.684. It's not to be given in a civil case."

We will assume for purposes of this appeal that counsel's exception was addressed to the jury instruction based on ORS 483.999 (1).

 The trial court's instruction was not erroneous because ORS 483.999 is "criminal in nature" or because it provides for a criminal penalty. Statutes which are criminal in nature frequently provide the basis for civil liability. *See* Morris, *The Relation of Criminal Statutes to Tort Liability*, 46 Harv L Rev 453 (1933); Lowndes, *Civil Liability Created by Criminal Legislation*, 16 Minn L Rev 361 (1932). The presence of a penalty provision in the statute has no effect on liability for negligence unless it can be said that the

---

breath, blood, urine or saliva shall give rise to the following presumptions:

"* * * * *.

"(c) Not less than .10 percent by weight of alcohol in his blood, supports a disputable presumption that he was then under the influence of intoxicating liquor.

"* * * * *."

ORS 483.999 (1):

"(1) Any person who drives any vehicle upon any highway of this state when that person has .15 percent or more by weight of alcohol in his blood as shown by chemical analysis of the person's breath, blood, urine or saliva * * * shall be punished, upon conviction * * *.

"* * * * *."

provision was intended to preclude civil liability. Restatement (Second) of Torts § 287 (1965). We find nothing in ORS 483.999 which conveys such a legislative intent.

Prosser states that a violation of a statute may justify the imposition of civil liability when the court determines that the statute is "designed to protect the class of persons in which plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation * * *." W. Prosser, Law of Torts 200 (4th ed 1971). ORS 483.999 was designed not only to impose certain criminal penalties on convicted violators, but also to declare that the described conduct is dangerous to other drivers and pedestrians using the highway.

The final assignment of error relates to the refusal of the court to instruct the jury on defendant's failure to equip the log loader with a rearview mirror in conjunction with the specification of lookout. As we have already ruled, the jury could not have found this statutory violation to be a contributing cause of the accident. Therefore, the court's ruling was not erroneous and could not have been prejudicial.

Defendant cross-appeals, contending that the jury should not have been permitted to disbelieve uncontradicted evidence that defendant had suffered damages to its log loader in the amount of $8,801.11. The jury had answered Question No. 5 of the Special Findings of Fact as follows:

> "What sum of money will fairly and reasonably compensate Kinzua Corporation for damages to its log loader?
>
> Answer: $ 0.00"

Mr. Williams, manager of the repair firm, testified that

his company received the damaged log loader from defendant several days after the accident with instructions to repair it. Williams testified without contradiction that his firm performed repairs on the loader for which it charged the reasonable sum of $8,801.11.

■ ■ Defendant contends that the jury should not have been permitted to disbelieve this testimony, relying on *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962). We do not get to the point of applying *Rickard v. Ellis, supra.* Oregon follows the general rule that the measure of damage to personal property is diminution of value or " '* * * the difference between its value at the place immediately before and immediately after the injury.' *Hansen v. Oregon-Wash. R. & N. Co.,* 97 Or 190, 201, 188 P 963, 191 P 655 (1920)." *Mock v. Terry,* 251 Or 511, 512, 446 P2d 514 (1968). The court instructed the jury concerning this basic rule.

Mr. Williams was not familiar with the condition of the log loader before the collision. He first saw it when it was brought to the shop for repair. He testified:

"Q And, in your opinion, would the log loader be depreciated in at least that amount [$8,801.11]?
"A From the new price, probably, yes."

At the time of the accident the log loader had approximately 9,103 hours of operation and thus may have required some of the accomplished work notwithstanding the collision. It is common knowledge that in the loading and unloading of log trucks and trailers the normal wear and tear to loading equipment can be substantial. Mr. Williams did not testify that all of the repair work which his firm performed was necessitated by the accident involved herein. Thus, it appears that Williams's testimony was probative of the cost of repairs but not on the issue of diminution of value.

We do not know how the jury arrived at that portion of its finding showing that "$0.00" would reasonably compensate the defendant.

■ The testimony that the repairs were necessitated by the collision is opinion testimony by an expert. In *City of Portland v. Ruggero*, 231 Or 624, 630, 373 P2d 970 (1962), we stated the general rule:

> "It is not the rule, however, that the trier of the facts is bound by the opinion evidence of experts, even though it be uncontradicted. As we said in *Paine v. Meier & Frank Co.*, 146 Or 40, 44, 27 P2d 315, 29 P2d 531:
>
> " 'The probative weight to be accorded to the estimates of witnesses as to rental value and depreciation was a matter entirely for the jury.' "

Defendant bore the burden of proving its recoverable damages. In light of the failure of proof on the question of diminution of value, the jury was justified in returning a verdict of zero damages on defendant's counterclaim. We find no error in this respect.

Affirmed.

TONGUE, J., dissenting.

I must respectfully dissent because I believe that the majority is in error in affirming the action of the trial court in excluding all evidence offered by plaintiff to the effect that there was available for defendant's use in moving its log loader a private road immediately adjacent to the highway.

In considering that offer of proof it is important to bear in mind that plaintiff's complaint alleged that defendant operated a "traxcavator log loader" at night on a public highway at "an unreasonably slow rate of speed."

In holding that it was not error to reject that offer of proof the majority says:

> " 'Consideration must also be given to any alternative course open to the actor. Whether it is reasonable to travel a dangerous road may depend upon the disadvantages of another route; and while mere inconvenience or cost may not in themselves be sufficient to justify proceeding in the face of great danger, they may justify taking other risks which are not too extreme * * *.

> " 'The alternative dangers to the actor himself and to others must be thrown into the scale, and a balance struck in which all of these elements are weighed.' W. Prosser, Law of Torts 148-49, § 31 (4th ed 1971).

> "Plaintiff made an offer of proof but it consisted solely of a number of other automobiles being detoured around the scene of the accident on the alternate route. This would prove that automobiles could use the alternate route, but there is nothing in the proof to show that such route was available to a vehicle with the weight of the log loader or that he proceeded on the highway 'in the face of great danger.' "

Upon examination of the record it appears that this "log loader" was equipped with four large rubber tires. It also appears that the accident occurred after the log loader had been used to unload a log truck at an unloading area behind defendant's plywood plant on the west side of the highway and while it was being returned to the shop area on the east side of the highway at a point approximately 250 feet north of the entranceway to the highway from the unloading area. According to the testimony, this equipment had traveled approximately one-half of that distance and was proceeding in next to its lowest gear, at a speed of "8, 10 or 12" miles per hour when the accident occurred.

There was also testimony that the entranceway used to enter the highway was "directly across" from an entranceway on the opposite side of the highway. Objections by defendant were sustained, however, when plaintiff attempted to show that there was a roadway from that entranceway leading north to the shop area, so that the operator of the log unloader could have simply crossed the highway and used that "alternate route" back to the shop.

Plaintiff then made an offer of proof of the testimony of a state police officer to the effect that after the accident traffic going north was diverted off the highway "onto the side road"; that it was "possibly 150 feet from the accident to where this side road took off, and then it came down to the shop"; that 30 or 40 vehicles were detoured by that route, and that "none of them had any difficulty negotiating this side road."

With all due respect to the majority, it is most respectfully submitted that a jury could properly find from this evidence that this entire 250 foot strip was contiguous to defendant's plant and operations and that this log loader, with its large rubber tires, was designed so as to operate on both highways and "side roads" used by automobiles, as well as an off-the-road vehicle; that there was no reason why it could not have used that "side road" back to the shop area, and no such contention was made by defendant at the time of trial.

As for the suggestion by the majority that evidence of alternate roads is admissible only when the route used would be "in the face of great danger," the answer is twofold. (1) The jury could have properly found from the evidence that to operate this log

loader on the highway at night at a speed of 8 to 12 miles per hour did involve a risk of "great danger" of a rear-end collision with a rapidly moving automobile, and (2) as will appear from the following discussion, the true test for the admissibility of such evidence is whether or not the "risk of harm" resulting from the route or alternate route actually used is "reasonable" —surely a question for the jury under the facts of this case.

It may be that the failure to use the available private road would not, of itself, have been sufficient to constitute negligence and that the trial court, for that reason, did not err in striking plaintiff's attempt to allege that fact as a separate and independent specification of negligence. It does not follow, however, that because a fact may not be sufficient to provide a proper basis for a separate specification of negligence, that same fact is not relevant and admissible evidence. In my opinion, the fact that a private road was available adjacent to the highway was admissible on the ground that it was one of the facts and circumstances which the jury was entitled to consider in deciding whether defendant was negligent in undertaking to move this large and heavy piece of logging equipment on a public highway at night and at a slow rate of speed.

Restatement (Second) of Torts § 291 (1965), states the following rule:

> "Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act *or of the particular manner in which it is done.*" (Emphasis added)

To the same effect, see *Bertrand v. Palm Springs,* 257 Or 532, 536, 480 P2d 424 (1971).

Furthermore, as set forth in Restatement (Second), *supra,* § 302A:

"An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person."

To the same effect, see *Mezyk v. National Repossessions,* 241 Or 333, 337-38, 405 P2d 840 (1965) (negligence in leaving keys in car which was then stolen and involved in accident, causing injury to plaintiff). *Cf. Eitel v. Times, Inc.,* 221 Or 585, 591, 352 P2d 485 (1960), and *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607, 469 P2d 783 (1970).

In balancing these various factors and, in particular, in determining the "utility of the act or of the particular manner in which it is done," the following rules are to be applied, according to Restatement (Second), *supra,* § 292:

"In determining what the law regards as the utility of the actor's conduct for the purpose of determining whether the actor is negligent, the following factors are important:

"(a) the social value which the law attaches to the interest which is to be advanced or protected by the conduct;

"(b) the extent of the chance that this interest will be advanced or protected by the particular course of conduct;

"(c) *the extent of the chance that such interest can be adequately advanced or protected by another and less dangerous course of conduct.*" (Emphasis added)

The comment to Clause (c) says that:

> "*If the actor can advance or protect his interest as adequately by other conduct which involves less risk of harm to others, the risk contained in his conduct is clearly unreasonable.* If any other practicable course of conduct is clearly likely to give his interest a less adequate advancement or protection the question whether the risk *is* or is not unreasonable depends upon whether the additional risk involved in the particular course of conduct outweighs the additional advancement or protection which it is likely to secure. \* \* \*" (Emphasis added)

See also 2 Harper and James, Law of Torts 935-36, § 16.9 (1956).

To the same effect, Prosser states in his Law of Torts (4th ed 1971) 148, § 31, that:

> "Consideration must \* \* \* be given to any alternative course open to the actor. Whether it is reasonable to travel a dangerous road may depend upon the disadvantages of another route; and while mere inconvenience or cost may not in themselves be sufficient to justify proceeding in the face of greater danger, they may justify taking other risks which are not too extreme. \* \* \*"

It is well established that the weighing of these various factors is generally for the jury. See 2 Harper and James 936, § 16.10 (1956)①. As stated in *Stewart v. Jefferson Plywood Co., supra* at 607:

> "\* \* \* The jury is given a wide leeway in de-

---

① The reason for this, according to the leading decision by Justice Learned Hand in Conway v. O'Brien, 111 F2d 611, 612 (2d Cir 1940), is that the risk, the gravity of the injury, and the interest to be sacrificed in avoiding the risk

"\* \* \* are practically not susceptible of any quantitative estimate, and the second two are generally not so, even theoretically. For this reason a solution always involves some preference, or choice between incommensurables, and it is consigned

ciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it."

Indeed, as also stated by this court in *Powell v. Moore,* 228 Or 255, 263, 364 P2d 1094 (1961):

"We are not permitted to remove from the jury the question of defendant's negligence unless we can say that defendant did not in any respect fail to exercise due care and that it would be impossible for reasonable men sitting as a jury to conclude that he did. * * *"

In numerous cases these rules have been applied to "alternate routes" or "alternative courses of conduct." Although not involving identical facts, these cases include the following: *Kaukonen v. Aro,* 142 Cal App 2d 502, 298 P2d 611, 613-14 (1956) (defendant chose icy mountain road over safer but longer route); *Saetz v. Braun,* 116 NW 2d 628 (ND 1962) (defendant chose to cross bridge instead of taking safer but longer route); *Stemmler v. City of Pittsburgh,* 287 Pa 365, 135 A 100 (1926) (biker chose to use potholed, muddy street instead of taking longer alternative route); *Williams v. East Bay Motor Coach Lines,* 16 Cal App 2d 169, 60 P2d 320 (1936) (pedestrian chose to walk in street to keep feet dry and for convenience rather than to use sidewalk); *Stricklin v. Rosemeyer,* 61 Cal App 2d 359, 142 P2d 953 (1943) (motorist chose to get out of car on street instead of sidewalk side); *Jordan v. Sinclair*

---

to a jury because their decision is thought most likely to accord with commonly accepted standards, real or fancied."

See also Hess v. Larson, 259 Or 282, 286-87, 486 P2d 533 (1971), holding that questions of negligence are for the jury, rather than for the court, "in all but the most exceptional accident cases."

*Refining Company,* 257 Iowa 813, 135 NW2d 120 (1965) (workman chose, for reasons of convenience, to use auto hoist without safety catch); *Scurco v. Kart,* 377 Pa 435, 105 A2d 170 (1959) (plaintiff chose to use darkened stairway where alternative route was available).

Some of these cases involve the question of contributory negligence by a plaintiff, rather than negligence by a defendant. However, as this court observed in *Leap v. Royce et al,* 203 Or 566, 574, 279 P2d 887 (1955), the only difference between negligence for which defendant is responsible and contributory negligence is that "negligence involves a risk of injury to another, whereas contributory negligence involves a risk of injury to the one injured." The tests and rules of law applicable to one, said the court in *Leap,* are usually applicable to the other.

Although not involving "alternative routes" or "alternative courses of conduct," this court held in *Nelson v. Watters,* 255 Or 64, 68, 463 P2d 863 (1970), that to operate a motor vehicle at a slow rate of speed on an arterial highway is "a menace and impediment" to approaching vehicles. See also ORS 483.114.[2]

In my view, by the application of these well-established rules of law to the facts of this case, as alleged in plaintiff's complaint, a jury could find that defendant had a choice between two equally available and convenient routes for the moving of its log loader, one by a public highway and the other by an "immediately adjacent private road"; that a reasonably

[2] In Schnell v. Goodwill Industries, 253 Or 100, 451 P2d 484 (1969), cited by defendant, there was no direct allegation that an alternate route or alternate course of conduct was available, as in this case, and that question was not considered by this court.

prudent owner of such a slow and heavy piece of logging equipment should have realized that to move it at night on a highway and at a slow rate of speed involved the danger of a rear-end collision with a rapidly moving automobile, with the result that a reasonably prudent person would have chosen to move the equipment by the "immediately adjacent private road," and that defendant was negligent in failing to do so in the absence of a showing by defendant of some emergency or other circumstance justifying him in moving the equipment on the public highway and at night.

To the same effect, to use the words of Restatement, *supra,* § 292, comment to Clause (c), as quoted above, the jury could properly find from the facts alleged in this case that defendant could have "advanced his interest" in moving this piece of heavy logging equipment "as adequately" by use of the immediately adjacent private road, which "involve[d] less risk of harm to others," with the result that "the risk contained in his conduct" in moving that equipment at night on a public highway and at a slow rate of speed was "clearly unreasonable."

It is suggested that if defendant was negligent in moving this equipment at night on the highway at a slow speed it is immaterial whether or not any alternate route was available. This, however, would overlook the rule that in determining whether a party was negligent and, for that purpose, in evaluating the "utility" of his conduct, the jury is entitled to consider *all* of the relevant facts and circumstances.

The complaint alleged, and evidence was offered, that defendant undertook to move this heavy log loader on the public highway at night and at an unreasonably

slow speed. In evaluating those facts the jury was permitted to consider two alternative courses of conduct: the alternative of moving the log loader during daylight hours, and the possible alternative of moving it at a faster speed.[⑤]

Upon consideration of those two facts alone a jury might, or might not, find that the defendant was negligent or (this being a comparative negligence case) that any such negligence was greater, or less, in terms of "comparative fault," than any contributory negligence by the plaintiff.[⑥] Apparently, after considering

---

[⑤] As stated in Rogers v. Tegarden Packing Co., 185 Mo App 99, 170 SW 675, 677 (1914):

"While it cannot be laid down as a set rule that ordinary prudence requires every act to be done in the safest way, yet in determining whether the way it was done meets the requirement as to the exercise of ordinary care, either as a question of law or one of fact, there must be taken into consideration the circumstances surrounding the occurrence of an injury sustained in doing the act; and the existence of a safer method which was at hand and within the voluntary choice of the injured person always enters into the question as a material element; it is one of the surrounding circumstances."

[⑥] As stated in Lovesee v. Allied Development Corp., 45 Wis 2d 340, 173 NW2d 196, 199 (1970):

"Commonly this determination is expressed in percentage of negligence in order to express in layman's language the amount of fault or blame which should be ascribed to the tortfeasor. Winkler v. State Farm Mutual Auto. Ins. Co. (1960), 11 Wis.2d 170, 105 N.W.2d 302. In this process of apportionment the jury must consider the conduct of the parties as a whole and in doing so must consider the standard of care applicable to the acts or omissions constituting the tortfeasor's conduct, the nature and character of the conduct and its intensity, directness and remoteness, as a substantial factor in the chain of causation."

As observed by Prosser, Selected Topics on the Law of Torts 26 (1953), in discussing comparative negligence:

"* * * Although there is a great deal of rather casual and careless language to the effect that the plaintiff's recovery must be diminished to the extent that his negligence has been

these facts, the jury found that defendant was negligent, but that in terms of comparative fault defendant's negligence was 44 per cent, compared with plaintiff's negligence of 56 per cent.

The jury was not, however, allowed to consider a third alternative course of conduct; namely, that "there was available for defendant's use a private road immediately adjacent to said public highway." By excluding plaintiff's offer of evidence to establish that fact plaintiff was deprived of his right to have the jury consider all of the relevant facts and circumstances, including that important fact, in evaluating the "utility" of defendant's conduct and in deciding whether he acted as a reasonably prudent person would have acted under all of the facts and circumstances. Plaintiff was also deprived of the right to have the jury consider that fact in considering defendant's conduct, together with that of plaintiff's conduct, in terms of "comparative fault."

Had the jury been allowed to consider evidence that "there was available for defendant's use" in the moving of this large, heavy and slow log loader, "a private road immediately adjacent to said public highway," the jury might well have found that in choosing instead to move that equipment on the public highway, at night and at an "unreasonably slow rate of speed," the defendant was not only negligent, but that in terms of "comparative fault," defendant's negligence was more than 50 per cent, rather than 44 per cent. Indeed,

---

'causal,' or has 'contributed' to his injury, there seems to be little doubt that, once causation is found, the apportionment must be made on the basis of comparative fault rather than comparative contribution. * * *"

a consideration of that fact might well have tipped the balance in favor of the plaintiff in a case in which that issue was as close as it apparently was to the jury, even without consideration of that fact.

For all of these reasons, I would remand this case for a new trial.

HOLMAN, J., joins in this dissent.